372 A.2d 705

**COMMONWEALTH of Pennsylvania**

v.

**Donald F. DOWD, Appellant.**

Supreme Court of Pennsylvania.

Argued Jan. 22, 1976.

Decided Feb. 28, 1977.

Reargument Denied May 10, 1977.

Colie B. Chappelle, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION OF THE COURT

O'BRIEN, Justice.

Appellant, Donald Dowd, was tried by a judge and jury and found guilty of murder in the first degree and conspiracy. Post-verdict motions were denied and appellant was sentenced to life imprisonment on the first-degree murder conviction and received a suspended sentence on the conspiracy conviction. This court on March 12, 1975, granted appellant the right to appeal *nunc pro tunc*.

Appellant first argues that the charges against him should have been dismissed for want of a speedy trial. We do not agree.

Our analysis of whether appellant was denied his constitutional right to a speedy trial must be conducted within the framework of the four-prong balancing test

established by the United States Supreme Court's decision in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972),[1] where the Court identified the four factors as: "Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant."

*(a) Length of Delay*

The length of delay is the "trigger mechanism" which must be considered first. "Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance." *Barker v. Wingo, supra,* at 530, 92 S.Ct. at 2192.

The murder for which appellant stands convicted occurred on November 22, 1970, in the City of Philadelphia. Appellant fled the Philadelphia area and was apprehended on November 28, 1970, in Atlanta, Georgia. He was then indicted as a fugitive on December 16, 1970, and after an extradition contest he was returned to Philadelphia on February 6, 1971. On September 17, 1973, appellant was tried and convicted of murder in the first degree and conspiracy, some thirty-one months after his extradition to Pennsylvania.

Initially, we must point out that since appellant sought to contest his extradition into Pennsylvania, the time for determining the delay period of his trial would not start to run until February, 1971, when appellant was within the jurisdiction of Pennsylvania and available for trial, thus making the period of his delay in trial from February, 1971 until September, 1973, when the trial actually began. A thirty-one-month delay is presumptively prejudicial and requires an analysis of the remaining three factors. See *Commonwealth v. Williams*, 457 Pa. 502, 327 A.2d 15 (1974).

1. Appellant was indicted in December, 1970, prior to the effective date of Pa.R.Crim.P. 1100.

*(b) Reason for the Delay*

"Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. . . . A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay." *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. at 2192.

During his extradition contest appellant retained Cecil B. Moore, Esquire, of Philadelphia to represent him in Pennsylvania. Mr. Moore then represented appellant until May 22, 1973, when he withdrew from the case with court approval.

During the period from February, 1971 until May 22, 1973, Cecil Moore was appellant's counsel and appellant was within the jurisdiction of Pennsylvania. On March 16, 1972—some thirteen months after his return to Pennsylvania—appellant filed a *pro se* petition, demanding a speedy trial. This *pro se* petition was forwarded to Cecil Moore but no further action was taken by Mr. Moore. Thereafter, on April 1, 1973, appellant wrote to Judge Anderson requesting that his counsel, Mr. Moore, be relieved of his duties; this letter, accompanied by a letter from Judge Anderson, was forwarded to Cecil Moore, and on May 22, 1973, Mr. Moore was permitted to withdraw as counsel. Ronald Morrison, Esquire, then entered his appearance as defense counsel, and on September 6, 1973, Mr. Morrison presented a motion to quash appellant's indictment for want of a speedy trial; the motion was denied.

During the period from February, 1971 until May, 1973, appellant was represented by private counsel. During this twenty-seven month period, appellant's private counsel took no affirmative action to hasten appellant's trial and appellant does not contend otherwise. The thrust of appellant's argument is that the *pro se* petition for habeas corpus filed by him in March of 1972 and referred for action by the district attorney's office to Cecil Moore, constitutes a demand for immediate trial. Appellant argues it was incumbent upon the Commonwealth to list his case for trial, regardless of the dilatory actions of Cecil Moore. We do not agree.

In *Commonwealth v. Williams, supra,* this court was presented with a situation in which a defendant alleged a speedy trial violation occasioned by the nonaction of his court-appointed counsel, Cecil Moore. In *Williams,* we found that the delay caused by Mr. Moore should not be held against the defendant because Mr. Moore was appointed by the court and that the Court of Common Pleas of Philadelphia had an affirmative duty not to appoint a lawyer whose trial schedule on its face would necessarily occasion a delay in the speedy trial of a criminal defendant.

In the instant case we are not faced with court-appointed counsel, but rather with Mr. Moore being privately retained by appellant while he was in Atlanta, Georgia, fighting extradition to Pennsylvania. Appellant sought the services of Mr. Moore early in his legal battle and saw fit to be satisfied with Mr. Moore's representation until April of 1973. While appellant in the instant appeal places great weight on his demand for trial in his *pro se* petition filed in March of 1972, he does not argue that he wished to change counsel before April of 1973—some twenty-six months after his return to Pennsylvania.

We are not persuaded that it was incumbent upon the district attorney or the Court of Common Pleas of Phila-

delphia to act on the *pro se* petition filed by appellant in March of 1972. The petition was referred to Cecil Moore for action and none was taken. It would have been unethical for the district attorney to have spoken with appellant in March of 1972, and to have advised him to dismiss Mr. Moore in order to bring his case to an earlier trial. Moreover, at the time appellant was represented by Cecil Moore, Mr. Moore and the Court of Common Pleas of Philadelphia were involved in a lawsuit as to whether Mr. Moore could be barred from representing criminal defendants who privately retained him because of his huge backlog of cases. See *Moore v. Jamieson*, 451 Pa. 299, 306 A.2d 283 (1973).

It is clear from the record that the delay in bringing appellant's case to trial was attributable in large measure to appellant's privately retained defense counsel; this factor weighs heavily against appellant's speedy trial claim.

*(c) Defendant's Assertion of His Right*

"Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial." *Barker v. Wingo, supra,* 407 U.S. at 531–32, 92 S.Ct. at 2192–2193.

In the instant case, appellant was returned to Pennsylvania in February, 1971. He did not demand his right to a speedy trial until *March 16, 1972*—more than a year

after his extradition from Georgia. Moreover, he was contented with the representation by his privately retained counsel until *April, 1973*—over two years after his extradition—at which time appellant requested the removal of his counsel.

This lack of a prompt assertion of his right to a speedy trial for over one year after extradition, coupled with his failure to seek removal of his privately retained defense counsel, for more than two years after his return to the jurisdiction of Pennsylvania, negate appellant's claim of a denial of his right to a speedy trial.

### (d) Prejudice to the Defendant

"A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. . . . Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown." *Barker v. Wingo, supra* at 532, 92 S.Ct. at 2193.

In the instant case, appellant was incarcerated in Pennsylvania from February, 1971 until September, 1973. As this court stated in *Williams, supra:*

"That a pretrial delay of three and one-half years during which the accused is incarcerated is oppressive cannot be denied. Likewise, it would be pure sophistry to argue that this delay did not cause the accused

and his family severe anxiety. . . ." 457 Pa. at 507, 327 A.2d at 17.

The United States Supreme Court, however, in *Barker, supra,* placed the major emphasis on the possible impairment of the defense by a lack of a speedy trial. In this case, appellant does not suggest that his defense preparations were impaired or that defense witnesses became unavailable or had a loss of memory because of the lapse of time between the incident and the trial. We are, therefore, of the opinion that after applying the balancing test of *Barker, supra,* appellant was not denied his right to a speedy trial.

Appellant next argues that two statements given by the decedent, Ronald Murray, to the police at the hospital to which he was taken after being shot were inadmissible at appellant's trial. On November 22, 1970, the decedent was taken to a Philadelphia hospital with twelve gunshot wounds in his body. At the hospital emergency room Detective Floyd J. Gallo spoke with the victim and asked him who had shot him. Gallo told the victim he was going to die, and Murray then named four persons, including appellant, as his assailants. The second dying declaration was made on November 25, 1970, between 4 p. m. and 6 p. m., three days after the victim's arrival at the hospital. During this conversation, detective Morris spoke with Murray and advised him of his serious condition; again Murray named appellant as one of his assailants. Murray died shortly thereafter, on the evening of November 25, 1970.

First, we must point out that there was no timely objection made to the first statement introduced by Detective Gallo concerning the decedent's statement made on November 22, 1970, at the emergency room. Appellant is, therefore, precluded from raising this issue on appeal. See *Commonwealth v. Clair,* 458 Pa. 418, 326 A.2d 272 (1974).

The final statement made by the decedent between 4 p. m. and 6 p. m. on November 25, 1970, was objected to at trial but is admissible as a dying declaration of the decedent. While this statement was made in response to police questioning, the victim was well aware of the seriousness of his condition and his impending death, since he died shortly after making the statement in which he named appellant as one of his assailants. Under these facts we find the admission of the victim's statement to police permissible. See *Commonwealth v. Cooley*, 465 Pa. 35, 348 A.2d 103 (1975).

Appellant next argues that the court erred in refusing his motion for a new trial based upon after-discovered evidence. This evidence consisted of the testimony of Richard Stewart who, at a posttrial hearing stated that appellant was not involved in any way in the homicide of Ronald Murray and that he, Stewart, was responsible. Interestingly enough, this was the same testimony Stewart had given at the trial of another of appellant's co-defendants and which had already been rejected. See *Commonwealth v. Tervalon*, 463 Pa. 581, 345 A.2d 671 (1975).

The court below properly denied appellant's motion for a new trial based on after-discovered evidence on the basis that Stewart's testimony was not of the nature that would compel a different result at a second trial, that Stewart was available to testify at the time of appellant's trial and that the physical and testimonial evidence against appellant was overwhelming.

Appellant next argues that the court below erred in allowing the Commonwealth to introduce evidence of crimes committed by appellant other than the one for which he stood trial. In *Commonwealth v. Boykin*, 450 Pa. 25, 30, 298 A.2d 258 (1972), this court stated:

"It is true, of course, that a distinct crime, except under certain special circumstances, cannot be given in

evidence against a defendant who is being tried for another crime, because the fact of the commission of one offense is not proof of the commission of another. . . . But it is also true that sometimes there exist the 'special circumstances' which operate as exceptions to the general rule, and bring the case within the equally well established principle that evidence of other crimes *is* admissible when it tends to prove a common scheme, plan or design embracing the commission of two or more crimes so related to each other that proof of one tends to prove the others or to establish the identity of the person charged with the commission of the crime on trial,—in other words where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other. (Emphasis in original.)"

In the instant case, the evidence introduced by the Commonwealth falls into the *Boykin* exception. The Commonwealth introduced evidence that a restaurant in Philadelphia had been robbed by the militant organization to which appellant belonged and that the purpose of the robbery was to obtain funds to buy weapons for the group. Further, the Commonwealth's evidence established that the decedent, along with another person, spent a portion of the proceeds of the robbery, in violation of the group's command, thus proving the motive for the gangland-style killing of Murray for which appellant was ultimately convicted.

 Appellant next argues that he should be granted a new trial because he was denied effective assistance of trial counsel by both Cecil Moore and Ronald Morrison. Appellant's contention relating to the effectiveness of Cecil Moore is without merit. The delay in appellant's trial occasioned by Mr. Moore was consented to by appellant, as indicated by his failure to evidence dissatisfaction with Mr. Moore until April of 1973. The com-

plaint as to Mr. Morrison is also without substance. Appellant complains that Mr. Morrison's conduct alienated the jury against him. This complaint, even if proved, hardly constitutes ineffective assistance of counsel; nor does Mr. Morrison's failure to object to the first statement given by the victim of the police at the hospital. Without deciding the admissibility of the first statement, the second statement was admissible, was objected to, and contained the same information as the first statement.

Lastly, appellant raises issues not properly preserved for appellee review and, therefore, need not be considered.

Judgment affirmed.

EAGEN, J., concurs in the result.

ROBERTS, J., files a Dissenting Opinion.

MANDERINO, J., files a Dissenting Opinion in which NIX, J., joins.

ROBERTS, Justice, dissenting.

I cannot agree with the majority that appellant "consented to" the delay before trial nor can I agree that appellant's right to a speedy trial was not violated. I must also dissent from the majority's holding that appellant has not been denied the effectiveness of counsel.

I

Appellant was returned to Philadelphia from Georgia on February 6, 1971. Appellant was incarcerated for thirty-one months before his trial began on September 17, 1973.

Prior to his extradition from Georgia appellant retained Cecil B. Moore [1] as his counsel for this case. The

1. The fact that Mr. Moore has difficulty disposing of his large number of cases, see *Commonwealth v. Williams*, 457 Pa. 502, 327 A.2d 15 (1974); *Moore v. Jamieson*, 451 Pa. 299, 306 A.2d 283

case was not listed for trial. In March 1972, after thirteen months of detention awaiting trial, appellant sent a pro se petition to the court demanding a speedy trial. The petition was addressed to the court and it was apparent from the contents of the petition that appellant was voicing to the court his dissatisfaction with his counsel's inaction. However, the petition was not acted upon by the court, but was diverted first to the District Attorney's office and then to Mr. Moore.

Mr. Moore took no action, nor did the Commonwealth or the court. Neither the Commonwealth nor the trial court acted to list the case for trial. Appellant, who had not yet been found guilty, remained in jail. On April 1, 1973, two years and two months after appellant was returned to Pennsylvania to await trial, he sent a letter to the court asking that Mr. Moore be relieved of his duties as counsel. This communiqué did reach the trial judge and in May, 1973, Mr. Moore was allowed to withdraw. New counsel entered an appearance and trial began in September 1973, thirty-one months after appellant was returned to Pennsylvania.

The Commonwealth's position, simply stated, is that there was no violation of appellant's right to speedy trial because "the Commonwealth was at all times ready and willing to try appellant's case whenever Mr. Moore would make himself available." This position is without support in the record since the Commonwealth never scheduled the case for trial. Incredibly—even in view of appellant's having petitioned the court demanding a speedy trial—the majority finds, "The delay in appellant's trial occasioned by Mr. Moore was consented to by appellant, as indicated by his failure to evidence dissatisfaction with Mr. Moore until April of 1973." I cannot join in such a fiction. Nor can I agree that the delay was occa-

(1973), should not affect this Court's analysis of appellant's claim. Nor may the Commonwealth or the trial court conclude that because Mr. Moore is counsel that the prosecution is relieved of its duty to list cases for trial. See A.B.A. Standards, note 2, infra.

sioned by Mr. Moore. The delay was occasioned by the Commonwealth's and the trial court's failure to schedule the case for trial.

The Commonwealth contends that it did all that was required by merely waiting until appellant's counsel was ready to try the case. On this record its position is untenable. The Commonwealth fails to recognize that it has an affirmative duty to move cases to trial. As the United States Supreme Court stated in *Dickey v. Florida*, 398 U.S. 30, 38–39, 90 S.Ct. 1564, 1569, 26 L.Ed.2d 26 (1970):

> "Although a great many accused persons seek to put off the confrontation as long as possible, the right to a prompt inquiry into criminal charges is fundamental and the duty of the charging authority is to provide a prompt trial."

This principle was repeated by the Supreme Court in *Barker v. Wingo*, 407 U.S. 514, 527, 92 S.Ct. 2182, 2190, 33 L.Ed.2d 101 (1972):

> "A defendant has no duty to bring himself to trial; the State has that duty as well as the duty of insuring that the trial is consistent with due process."

Thus, the Commonwealth cannot answer a speedy trial claim by saying that a defendant failed to bring his action to trial. The Commonwealth has a duty to schedule the trial timely.[2] A defendant may then seek to have the

---

2. See American Bar Association Project on Minimum Standards for Criminal Justice, Speedy Trial § 1.2 (Approved Draft, 1968):
> "Control over the trial calendar should be vested in the court. The prosecuting attorney should be required to file as a public record periodic reports with the court setting forth the reasons for delay as to each case for which he has not requested trial within a prescribed time following charging. The prosecuting attorney should also advise the court of facts relevant in determining the order of cases on the calendar."

Id., The Functions of the Trial Judge § 3.8 (Approved Draft, 1972):
> "The trial court has the ultimate responsibility for proper management of the criminal calendar and should take measures to insure that cases are listed on the calendar and disposed of as promptly as circumstances permit."

trial date postponed. This procedure insures that the record will reflect that any long delay in trial is actually attributable to the defendant who sought the postponement. The record here shows no action by appellant or his counsel to postpone the trial. It is not enough for the Commonwealth to point to a silent record and say that the silence constitutes the defendant's waiver of his speedy trial right. "Presuming waiver from a silent record is impermissible." *Carnley v. Cochran*, 369 U.S. 506, 516, 82 S.Ct. 884, 890, 8 L.Ed.2d 70 (1962); *Barker v. Wingo*, supra, 407 U.S. at 526, 92 S.Ct. at 2190.

Moreover, in this case the Commonwealth was on notice as early as March 1972, that appellant wanted to be tried. In these circumstances the duty of the Commonwealth to schedule the case for trial is undeniable.

It is manifestly unjust to attribute the delay here to appellant through the use of a "consent" fiction. The incarcerated defendant wrote to the court asking to be tried immediately. His letter was ignored by both the court and the Commonwealth. Yet the majority finds he consented to the delay only because he did not phrase his speedy trial demand as a demand to have his counsel withdraw. It is unfair to penalize appellant who was in jail and without the resources or opportunity to bring his demand to the court in any better way than that which he employed. There was no consent to the delay; nor can the record be forced to even suggest a waiver of the right to speedy trial.

The majority purports to follow the four-prong test announced in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which requires a balancing of (1) the length of delay; (2) the reason for the delay; (3) defendant's assertion of the right to speedy trial; and (4) the prejudice to the defendant caused by the delay. In fact, the majority follows a three-prong test, for it assigns as the reason for the delay defense counsel's failure to take affirmative action to bring the case to

trial. Under the majority's analysis, the reason for the delay is ignored and defense counsel's failure to assert the right is counted twice.

The majority points to no continuances or other delays requested by appellant during the thirty-one months he awaited trial in Pennsylvania. The majority's decision to attribute the delay to the failure of defense counsel to take affirmative action to bring the case to trial is not justified under the test announced in *Barker v. Wingo*. The prosecution, not defense counsel, has the affirmative duty to bring the case to trial. Id. at 527, 92 S.Ct. at 2190 (1972). To label defense counsel's action as "dilatory," when he has taken no action to delay trial, turns the analysis on its head.

The majority's approach also gives undue weight to the third factor in the *Barker v. Wingo* test: the defendant's assertion of his right. By attributing the delay to defense counsel's failure to demand an immediate trial, the majority circumvents the holding in *Barker v. Wingo* that failure to demand a speedy trial does not preclude a finding that a defendant's right to a speedy trial has been denied. Id. at 528, 92 S.Ct. at 2191 (1972).

Thus, the reason for the delay must be attributed to the Commonwealth's failure to bring the case to trial. This reason for the delay, and the length of the delay— thirty-one months weigh heavily in favor of a determination that appellant's right to a speedy trial has been denied. When these factors are considered with appellant's request for a speedy trial, over a year before he was tried, and the prejudice to appellant from being incarcerated over the entire period, there is no doubt that appellant has been denied his right to a speedy trial. The indictment should be quashed and appellant dismissed.[3]

3. The remedy is analogous to the statute of limitations. If the charge is not brought within the statutory time limit there may be no prosecution. Likewise if trial is not "speedy" there may be no prosecution. See, e. g., Pa.R.Crim.P. 1100; see generally, A.

## II

Because I would grant relief for the violation of appellant's right to speedy trial, it is unnecessary to reach the issue of counsel's ineffectiveness. In view of the majority's resolution of the ineffectiveness issue, however, I am compelled to express further dissent.

The majority finds that appellant cannot now challenge Mr. Moore's effectiveness because he consented to Mr. Moore's course of action through his failure to discharge Mr. Moore until April of 1973. This is an unacceptable standard. Obviously, a criminal defendant is in no position to evaluate his counsel's conduct. Moreover, in this case appellant was in jail and had little communication with counsel. He, therefore, cannot be said to have consented to his counsel's inaction or ineffectiveness.

The proper test for determining effectiveness of counsel was stated in *Commonwealth ex rel. Washington v. Maroney*, 427 Pa. 599, 604, 235 A.2d 349, 352 (1967):

> "Counsel's assistance is deemed constitutionally effective once we are able to conclude that the particular course chosen by counsel had some reasonable basis designed to effectuate his client's interests."

The majority does not apply this standard here. I am unable to determine, however, what "reasonable basis designed to effectuate his client's interests" there was in Mr. Moore's long months of inaction.

I dissent.

MANDERINO, Justice, dissenting.

I dissent from the majority opinion. In determining the speedy trial issue, the Court premises its reasoning on the novel and unwarranted assumption that the con-

G. Amsterdam, Speedy Criminal Trial: Rights and Remedies, 27 Stan.L.Rev. 525 (1975); Note, the Right to a Speedy Criminal Trial, 57 Colum.L.Rev. 864 (1957); *Strunk v. United States*, 412 U.S. 434, 93 S.Ct. 2260, 37 L.Ed.2d 56 (1973).

stitution guarantees the appellant a speedy trial by a lawyer *rather than* the judicial branch of government. According to the majority opinion, defense counsel did not ask for any continuances or otherwise request any delay in scheduling the trial of his client, he simply took no affirmative action to hasten appellant's trial which was not scheduled by the court system.

In March of 1972, eighteen months before appellant was brought to trial, he filed a pro se petition requesting a speedy trial. Because this petition was turned over to defense counsel and nothing was done, the majority holds that the delay of that eighteen-month period is attributable to the appellant. I must strongly dissent.

When one presents a petition to a court the court should act on the petition, not defense counsel. It is completely irregular for a petition addressed to the judicial branch to be ignored. Here, appellant's petition called for action by the judicial branch and no action was taken. Under the strange reasoning of the majority, a court need not act on a proper petition if the district attorney's office forwards a copy to the defense lawyer. Defense counsel in this case could very well have been justified in expecting that the court would act on the speedy trial petition.

The majority opinion indicates that appellant's trial, through no fault of the appellant, was not scheduled for a period of thirty-one months, including the period of eighteen months after appellant requested a speed trial and received no answer from the system to whom the petition was properly addressed. It is incumbent upon the court to act on a petition properly before it. It must, therefore, dissent from the majority's disposition of this matter.

NIX, J., joins in this dissenting opinion.