371 A.2d 1279

COMMONWEALTH of Pennsylvania

v.

James MYERS, Appellant (two cases).

Supreme Court of Pennsylvania.

Argued Jan. 20, 1976.

Decided Feb. 28, 1977.

Rehearing Denied April 25, 1977.

202

204

Daniel H. Greene, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Asst. Dist. Atty., Chief, Appeals Div., Mark Sendrow, Philadelphia, for appellee.

Before JONES, C. J., and EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

OPINION

JONES, Chief Justice.

■ Appellant, James Myers, was arrested on January 24, 1969 and charged with three others, in the robbery-murder of Charles Ben-Ami. On August 7, 1974, he

was found guilty by a jury of murder in the first degree and aggravated robbery. After denial of his post-trial motions, appellant was sentenced to life imprisonment on the murder conviction and to a concurrent ten to twenty year term on the robbery one. These appeals followed.[1]

The first of appellant's arguments for our consideration is that he was denied a speedy trial in violation of the United States and Pennsylvania Constitutions.[2] Appellant was arrested on January 24, 1969, and indicted on June 11, 1969. Trial was not convened until July 25, 1974, over five and one-half years since his arrest. Appellant was incarcerated for four and one-half years of that period.[3]

---

1. This Court has jurisdiction over the murder appeal by statute. Appellate Court Jurisdiction Act of 1970, Act of July 31, 1970, P. L. 673, Art. II, § 202(1), 17 P.S. § 211.202(1) (Supp.1976–1977). The robbery appeal has been certified to this Court from the Superior Court by order dated April 11, 1975.

2. U.S.Const. Amend. VI; Pa.Const. Art. I, § 9.

3. The following is a chronology of this case:

| | |
|---|---|
| 1/24/69 | Arrest |
| 5/27/69 | Preliminary hearing |
| 6/11/69 | Indictment |
| 2/9/70 | First listing for trial (continued) |
| 6/1/70 | continued |
| 7/24/70 | continued |
| 9/21/70 | continued |
| 11/12/70 | continued |
| 12/16/70 | continued |
| 12/28/70 | continued |
| 4/26/71 | continued |
| 10/7/71 | continued |
| 2/16/72 | Suppression hearing held |
| 11/2/72 | Motion to suppress denied |
| 11/30/72 | Appellant's counsel requests medical examination of appellant |
| 5/24/73 | Counsel requests hearing on results of medical examination |
| 6/25/73 | Pro se petition to dismiss counsel |
| 7/16/73 | New counsel appointed |
| 8/1/73 | Motion to quash filed |
| 10/5/73 | Bail and release |
| 7/3/74 | Supreme Court decision on motion to quash |
| 7/25/74 | Trial commences |

■■ It is argued first, that we should dismiss the indictments [4] for a violation of Rule 1100 of the Pennsylvania Rules of Criminal Procedure.[5] However, that Rule is inapplicable to the instant case because this case began prior to the effective dates in that Rule. *Commonwealth v. Lee*, 460 Pa. 374, 379 n. 2, 333 A.2d 773, 776 n. 2 (1975); *Commonwealth v. Hamilton*, 449 Pa. 297, 308–09, 297 A.2d 127, 132–133 (1972); see *Commonwealth v. Woods*, 461 Pa. 255, 257, 336 A.2d 273, 274 (1975).

In the absence of a claim based upon Rule 1100, the instant facts are controlled by the analysis set out in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In that case, the United States Supreme Court delineated four factors to be considered in an examination of a speedy trial violation claim. Those factors to be considered are: the length of the delay; the reason for the delay; the defendant's assertion of his right; and the prejudice to the defendant. This Court has applied this analysis several times previously. *See, e. g., Commonwealth v. Roundtree*, 469 Pa. 241, 364 A.2d 1359 (1976); *Commonwealth v. Hamilton, supra.*

■■ The length of the delay is not, *per se*, determinative. *Barker, supra* 407 U.S. at 533, 92 S.Ct. 2182. Extensive delay is the triggering mechanism which raises a presumption of a speedy trial violation, thus necessitating an inquiry into the remaining factors. *Barker,*

4. Dismissal or discharge of the indictment is the only adequate remedy in speedy trial cases. *Commonwealth v. Roundtree*, 469 Pa. 241, 251 n. 10, 364 A.2d 1359, 1364 n. 10 (1976) and cases cited therein.

5. That Rule provides in pertinent part:
"(a)(1) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1973 but before July 1, 1974 shall commence no later than two hundred seventy (270) days from the date on which the complaint is filed.
(2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed."
Pa.R.Crim.P., Rule 1100.

*supra* at 530, 92 S.Ct. 2182; *Roundtree, supra* at 250, 364 A.2d at 1364; *Commonwealth v. Williams,* 457 Pa. 502, 327 A.2d 15 (1974). Undoubtedly, the five and one-half year delay in the instant case raises this presumption and, indeed, the Commonwealth concedes as much in its brief. Despite this extraordinary delay, we conclude, upon balancing the other factors involved, that there was no denial of the speedy trial rights of appellant.

We first examine the reason for the delay in this case. In discussing this factor, the United States Supreme Court stated:

> "Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay."

*Barker, supra* at 531, 92 S.Ct. at 3192.

Although appellant was arrested in January 1969, and indicted in June of that year, his trial was not listed until February 9, 1970. This period, up until the first listing, is the only unexplained delay in this case. However, from this first listing until October 1971, there were several continuances which the court below found were caused by appellant's counsel's unavailability for trial. The court placed the burden for this delay solely upon appellant and his counsel and the record supports that conclusion.

■ There are two other time periods which we cannot consider to be unjustified delay. The first started in February 1972, when a hearing was held on a motion to suppress appellant's allegedly involuntary statement. This motion was eventually denied in November 1972. The second period began in August 1973. Appellant's newly appointed counsel filed a motion to quash the indictments on grounds of a speedy trial violation. The denial of that motion was appealed to this Court and, on July 3, 1974, we ruled that appeal was interlocutory and ordered a trial forthwith. *Commonwealth v. Myers*, 457 Pa. 317, 322 A.2d 131 (1974).

These periods, nine months for resolution of the motion to suppress and eleven months for appeal of the motion to quash, cannot be labeled unjustified delay. As Mr. Justice Roberts stated previously for the Court:

"We believe that a reasonable amount of time consumed by the disposition of motions and interlocutory appeals not made for purposes of delay, regardless of who is the moving party, is justifiable delay."

*Commonwealth v. Ware*, 459 Pa. 334, 347, 329 A.2d 258, 264–65 (1974). In view of the fact that the pre-trial motions and interlocutory appeals in *Ware* consumed thirty-three months *Id.*, the instant periods are not unreasonable. Furthermore, there was evidence in the record that part of the delay in the suppression decision was because appellant's first attorney was tardy in filing his brief on that issue.

■ Yet another source of delay can be laid at the feet of appellant's first attorney. After the motion to suppress was denied, the case was ready for trial on November 30, 1972. The attorney, Mr. Moore, at that time requested a medical examination to determine if appellant was able to stand trial. The case was again listed for December 18, 1972, after it was determined that appellant was fit to stand trial. However, Mr. Moore then

began a program designed to expedite the processing of his large caseload.[6] As part of this program, he was not scheduled for murder trials until the spring of 1973. The first such case to be called was the instant one. However, Mr. Moore requested a delay so that the court could hold a hearing concerning the results of the December medical examination. Shortly after this, appellant dismissed Mr. Moore and his present counsel was appointed. Based upon this series of events and the testimony by the Commonwealth witnesses that the prosecution was at all times ready for trial, the court below concluded that "the record indicates that the actual delay in bringing the Defendant to trial was not caused by the Commonwealth, but rather was caused by Mr. Moore's unavailability for trial and the delays occasioned by the motion to suppress and the motion for a competency hearing." Upon a review of the record, we agree that the greater amount of the delay is attributable to appellant and not to the Commonwealth.

Nonetheless, appellant, relying upon *Commonwealth v. Williams, supra,* argues that the delay is attributable to the state because it is the duty of the Commonwealth to bring a defendant to trial and the duty of the court to control an attorney's calendar. In referring to Mr. Moore and his large caseload, this Court discussed the problem at length in *Williams.*

"Although the record substantiates the allegation that the delay was precipitated by appellant's attorney's scheduling problems, this does not end the inquiry. Counsel was court appointed. . . . The court not only has a duty to appoint counsel but also the responsibility to exercise its inherent power to control the trial calendar. See Pa.R.Crim.P. 1100.

Moreover, the prosecution not only failed to object to the appointment of an attorney with a substantial

6. *See Moore v. Jamieson,* 451 Pa. 299, 306 A.2d 283 (1973).

backlog, but actively participated in delaying appellant's trial. As part of the 'priority program' initiated to expeditiously dispose of the substantial criminal backlog in the Philadelphia courts, a courtroom and assistant district attorneys were assigned to appellant's counsel. The record establishes that subject to the court's ultimate power and duty to control its calendar, scheduling of the cases was left to the parties. According to the testimony of an assistant district attorney assigned to the program: 'We wanted to take the easier cases, so we just simply put the homicides aside and we didn't even discuss them. . . .' This prosecutorial conduct resulted in appellant's case not even being considered for more than two years. Certainly this admission precludes a finding that the Commonwealth was not responsible for the procrastination which characterized the scheduling of appellant's trial." (Citations omitted).

However, for several reasons we believe *Williams* is inapposite. First, the delay occasioned by Mr. Moore's priority program in the instant case was about six months, far short of the two years in *Williams*. Second, in the present case Mr. Moore was privately retained. The court had no control over his appointment and the Commonwealth could not interfere in this choice in any manner. Because the Commonwealth had no say in appellant's choice of attorney and because any active participation resulted in only six months further delay, we cannot place the burden for all of this delay upon the Commonwealth. *See Commonwealth v. Dowd*, 472 Pa. 296, 372 A.2d 705 (1977); *See also Commonwealth v. Hicks*, 231 Pa.Super. 272, 332 A.2d 452 (1974).

The next factor to be considered is appellant's assertion of his right to a speedy trial. The court below found that appellant did not assert this right until August 1, 1973, when the motion to quash was filed by his court appointed counsel, Mr. Greene.

The final criterion to be examined is the prejudice to appellant resulting from this delay. This factor was further explicated in *Barker*:

"Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit possibility that the defense will be impaired."

*Barker, supra,* 407 U.S. at 532, 92 S.Ct. at 2193. Unquestionably, appellant has suffered inherent prejudice from his four and one-half year incarceration. Similarly, as Mr. Justice Roberts stated in *Williams* referring to a three and one-half year period therein, "it would be pure sophistry to argue that this delay did not cause the accused and his family severe anxiety." *Williams, supra* at 507, 327 A.2d at 17.

However, the most crucial of these interests is the impairment of a defense. *Barker, supra,* 407 U.S. at 532, 92 S.Ct. 2182; *Ware, supra* at 459 Pa. 348, 329 A.2d at 265. In those cases where we have noted such an impairment, it usually involved the death of witnesses, *e. g., Commonwealth v. Hamilton, supra; Commonwealth v. Roundtree, supra,* or the loss of other important evidence, *e. g., Commonwealth v. Roundtree, supra.* In the instant case, however, appellant has failed to make any showing which would indicate any similar interference with his ability to present his defense. This failure is persuasive that no such impairment existed.

The balancing of these factors is a delicate process. The length of delay was extraordinary. Because of that delay, appellant has suffered the inherent prejudice of pre-trial incarceration. However, the largest amount of this delay is either directly attributable to appellate or justifiable under our decision in *Ware, supra.* Moreover, appellant failed to assert his rights until over four years

had elapsed. This fact weighs against his claim. *Barker, supra* 407 U.S. at 534, 92 S.Ct. 2182. Also, weighing against him is his failure to show any prejudice to his ability to present his defense resulting from the delay. While we do not countenance any unnecessary delay on the part of the Commonwealth, we are unable to conclude that appellant was deprived of his constitutional rights to a speedy trial. *Commonwealth v. Ware, supra*; *Commonwealth v. Pearson*, 450 Pa. 467, 303 A.2d 481 (1973); *Commonwealth v. Jones*, 450 Pa. 442, 301 A.2d 631 (1973).

Appellant also asserts two errors concerning an allegedly unnecessary delay between his arrest and preliminary arraignment and an incriminating statement given during that period. He initially argues that the confession should be suppressed because it was a product of that delay. *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). This issue was first raised at the beginning of trial because *Futch* had not been announced at the time of the suppression hearing. Although the *Futch* holding could be applied in a case such as this, *see Commonwealth v. Mitchell*, 464 Pa. 117, 346 A.2d 48 (1975), the fact that this argument was not asserted at the suppression hearing means appellant has waived it. *Id.* As Mr. Justice Nix stated in *Mitchell*:

"Defense counsel should have been aware that our rules of procedure required a prompt arraignment without an unnecessary delay. If it was ascertained that this direction had been ignored and his client prejudiced thereby, the fact that the penalty for such a violation had not been announced fails to provide an excuse for failing to raise the objection. [A] 'manifest unfairness' would result if we were to penalize police officials for not anticipating the imposition of a sanction for such a violation and at the same time relieve the defense from the responsibility of timely raising the objection. Where a counselled accused sits idly

by and fails to raise an objection to improper treatment to which he has been subjected, he will not later be heard to complain but must suffer the consequences of his silence."

*Id.* at 126, 346 A.2d at 53. *See Commonwealth v. Gilmore*, 464 Pa. 464, 347 A.2d 305 (1975).

■ In his second asserted error involving the delay appellant contends he was improperly restricted in his ability to present evidence and to argue to the jury concerning the delay's relationship to the voluntariness of his confession.[7] Appellant was taken into custody for questioning at 5:15 p. m. on January 24, 1969. Following a brief confrontation with a co-defendant, he made an oral admission at 10:15 p. m. which was followed by the challenged written statement at 11:05 p. m. After meeting with his attorney and resting in the interrogation room, appellant was placed in a detention cell at 7:16 a. m. on January 25. He was arraigned at 2:45 p. m. that day.

■ Although the confession was found to be voluntary and, therefore, admissible by the suppression court, appellant sought to challenge the voluntariness before the jury. If a jury determines that a confession was involuntary, it could ignore that evidence. *See Common-*

---

**7.** The Commonwealth argues that this claim has also been waived because appellant failed to request an instruction which dealt with the specific issue of delay as an element of involuntariness. It is argued that all of appellant's points for charge concerned the *Futch* issue alone. We note that appellant's counsel repeatedly objected to the restrictions imposed upon him. Furthermore, the third point for charge adequately preserved this issue. It stated:

"3. When a defendant has been arrested without a warrant, he shall be taken without unnecessary delay before a proper issuing authority where a complaint shall be filed against him. Where the delay is unnecessary, where prejudicial evidence is obtained, where the incriminating evidence is reasonably related to the delay, an accused's rights have been violated and any statement made by the accused renders such statement involuntary in character. *Commonwealth v. Williams,* 319 A.2d 419, Supreme Court of Pennsylvania, March 25, 1974."

This issue has been preserved for our review.

*wealth v. Heckathorn*, 429 Pa. 534, 544–45, 241 A.2d 97, 102–03 (1968) ; *Commonwealth v. McLean*, 213 Pa.Super. 297, 304, 247 A.2d 640, 643 (1968). In the pursuit of this voluntariness attack, appellant attempted to establish three violations of proper procedure which could lead to a decision that the confession was involuntarily exacted: (1) he was not warned of his rights; (2) he was questioned after his attorney instructed that the interrogation cease; and (3) he was arraigned only after an unnecessary delay of twenty-one and one half hours. The court restricted his case on the third point by allowing only the following evidence: (1) testimony and cross-examination as to events preceding the confession at 11:05 p. m., January 24; (2) the police chronology which ended at 7:16 a. m.; and (3) a stipulation that arraignment occurred at 2:45 p. m. on January 25. The court refused to allow testimony or cross-examination as to events which occurred after 7:16 a. m. It also reluctantly allowed argument to the jury on delay, but only after the evidence was closed. The court did instruct concerning delay, but the charge concerned *Futch* and went to the admissibility of the confession.[8] Appellant asserts that he should have been permitted to present evidence of the entire period of delay until arraignment and not merely that time until the confession was given. We agree that the court's restriction was error.

Initially, we note the importance of the confession in this case. This inculpatory statement was the only direct evidence of appellant's participation in the crime. There were no witnesses to the crime and, although there was some circumstantial evidence of his complicity, appellant presented several alibi witnesses. Because of this, even if the other evidence were deemed sufficient,

---

8. The court below gave the following instruction:
   "[U]nnecessary delay between a defendant's arrest and arraignment which reasonably relates to and produces inculpatory evidence in the form of an unsigned statement renders the admission into evidence of such statement improper."

we are unable to conclude that the error was harmless. *See Commonwealth v. Dobson*, 465 Pa. 91, 348 A.2d 132 (1975).

Rule 323(j) of the Pennsylvania Rules of Criminal Procedure provides:

"If the court determines that the evidence is admissible, such determination shall be final, conclusive and binding at trial, except upon a showing of evidence which was theretofore unavailable, but nothing herein shall prevent a defendant from opposing such evidence at trial upon any ground except its admissibility."

Our courts have held that such a procedure allows a defendant to attack the voluntariness of a confession before the jury. *Commonwealth v. McLean, supra; cf. Commonwealth v. Heckathorn, supra.* This Court has often stated that unnecessary delay prior to arraignment is an element for consideration in a voluntariness decision. *Commonwealth v. Koch*, 446 Pa. 469, 288 A.2d 791 (1972); *Commonwealth ex rel. Butler v. Rundle*, 429 Pa. 141, 239 A.2d 426 (1968). We have continued to note that this element is important even after our decision in *Futch, supra.*

In *Commonwealth v. Simms*, 455 Pa. 599, 317 A.2d 265 (1974), we stated:

"Circumstances which must be considered include the accused's physical and mental condition, the delay between arrest and arraignment,[4] the attitude of the police, and other 'diverse pressures.'

\*    \*    \*    \*    \*    \*    \*    \*

[4] Although this case does not turn on an application of *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972), *the unnecessary delay prior to arraignment is nevertheless relevant in determining the voluntariness of Simms' confession. Commonwealth v. Eiland*, 450 Pa. 566, 572, 301 A.2d 651, 653 (1973) ; *Commonwealth*

*v. Koch*, 446 Pa. 469, 474–75, 288 A.2d 791, 793–94 (1972)."

*Id.* at 602–03, 317 A.2d at 267 (1974) (emphasis added and citations omitted).

While it is true that in a *Futch* analysis any post-confession delay is considered not prejudicial, *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974), that rule is inapplicable to a voluntariness challenge which is concerned with the totality of the circumstances surrounding the confession. In *Commonwealth ex rel. Butler v. Rundle, supra,* this Court stated that post-confession delay is relevant on the issue of voluntariness. As Mr. Justice O'Brien noted therein:

> "We cannot accept the contention that since the confession was made on the day of arrest, the succeeding six days are irrelevant to a consideration of the question of voluntariness of the confession. *Haley v. Ohio, supra,* 332 U.S. [596] at 600, 68 S.Ct. [302] at 304 [92 L.Ed. 224 (1948)], dealt with the question of postconfession improper police tactics: 'It is said that these events are not germane to the present problem because they happened after the confession was made. But they show such a callous attitude of the police towards the safeguards which respect for ordinary standards of human relationships compels that we take with a grain of salt their present apologia that the five-hour grilling of this boy was conducted in a fair and dispassionate manner.'"

429 Pa. at 155, 239 A.2d at 433. While the post-confession delay involved in the instant appeal is not of the magnitude of that involved in either *Butler* (five days) or *Haley* (three days), nonetheless, the court cannot take this issue from the jury on this basis alone. We cannot interfere with the jury's province to determine voluntariness based upon all factors because we do not know what facts would influence the outcome of their deliberation on that issue.

When this case was submitted to the jury, the only fact dealing with the delay subsequent to appellant's statement was the time of the arraignment. There was no evidence, beyond the entries on the police chronology, as to what occurred after appellant's attorney left about 1:00 a. m. Where the defendant attempts to challenge a confession before the jury on voluntariness grounds, he cannot be restricted to only the time between arrest and confession. The court below erred in so restricting and its agreement to allow counsel to argue the point to the jury came too late to aid appellant.

The judgments of sentence are reversed and the matter is remanded for a new trial consistent herewith.[9]

ROBERTS, J., filed a concurring opinion in which MANDERINO, J., joined.

POMEROY, J., filed a concurring opinion.

NIX, J., filed a dissenting opinion in which EAGEN, J., joins.

ROBERTS, Justice (concurring).

I agree with the majority that appellant is entitled to a new trial because he was not permitted to present evidence of the entire pre-arraignment delay, including the period of delay after his confession was taken as an evidence that the confession was involuntary.[*]

---

9. We do not reach the issue of whether appellant's confession was involuntary because he has not raised that issue in this Court. Nor do we reach his other allegations of error, concerning defects in the court's jury charge, because our disposition renders consideration of them unnecessary.

* I also agree with the majority that appellant has not been denied the right to a speedy trial. It is necessary to address this claim, even though appellant is entitled to a new trial on other grounds, because denial of the right to a speedy trial would entitle appellant to the greater relief of an absolute discharge. Pa.R.App.P. 311(b) (defendant may appeal from an order awarding a new trial if he claims proper disposition would be an absolute discharge).

I see no reason, however, for the majority to address the issue whether appellant has waived his claim that he is entitled to a new trial because his confession should have been suppressed as the product of an unnecessary pre-arraignment delay. *Commonwealth v. Futch*, 447 Pa. 389, 290 A.2d 417 (1972). Appellant is being granted a new trial because relevant evidence was excluded; there is no need to address any other claims that also might require a new trial.

MANDERINO, J., joins in this concurring opinion.

POMEROY, Justice (concurring).

I agree with the Court that appellant has not been denied the right to a speedy trial and that he has waived the issue of whether his confession should have been suppressed as the product of an unnecessary delay between arrest and preliminary arraignment. I also agree with the Court that appellant is entitled to a new trial because the trial court improperly restricted defense counsel in (1) presenting evidence concerning the time period between appellant's confession and his preliminary arraignment, and (2) arguing to the jury the relationship between that period of time and the voluntariness of appellant's confession. To the extent, however, that the Court holds or implies that a defendant is entitled at trial to raise the issue of *unnecessary* delay between arrest and preliminary arraignment, and argue to the jury that *unnecessary* delay is a factor to be considered in assessing the voluntariness of a confession, I disagree. In my view, the question of the necessity of the delay between arrest and preliminary arraignment is a question of law which is not within the province of the jury to consider or decide when confronted with a claim that a confession was obtained involuntarily. See *Commonwealth v. Coach*, 471 Pa. 389, 370 A.2d 358 (1977) (Pomeroy, J., concurring).

NIX, Justice (dissenting).

The majority of this Court today has reversed the judgment and awarded a new trial because of the trial judge's refusal to admit evidence by the defense as to the length of time that elapsed between the giving of a confession and the preliminary arraignment. The defense sought to introduce this evidence in support of its contention that the confession was involuntarily extracted. The trial judge ruled that this evidence was irrelevant and I agree. I therefore dissent.

In testing the voluntariness of a statement, the inquiry must necessarily focus upon those factors influencing the accused when the incriminating statement is given. Obviously, that which occurs after the statement is only germane if it is in some way reflective of that which transpired at the time of the confession. The majority's reliance upon the rationale employed by the United States Supreme Court in *Haley v. Ohio*, 322 U.S. 596, 68 S.Ct. 302, 92 L.Ed. 224 (1948) is obviously misplaced under the instant factual situation.

In *Haley*, the accused, a 15 year old boy, was taken into custody around midnight on October 19, 1945. The confession was elicited at about 5 A.M. that morning. He was subsequently held until October 23, 1945 before being taken to a magistrate and formally charged. There was a significant dispute between Haley's version as to the treatment he received at the hands of the officers prior to the confession and that testified to by the police officers. Haley stated that he had been beaten and his testimony was corroborated by the fact that the clothing he wore at the time was torn and bloodstained. There was also evidence presented by the defense that when observed by his mother five days after the arrest he was bruised and skinned. The testimony of the police disputed that the youth had been in any manner mistreated by them.

In holding that the events that occurred after the confession had been obtained could be considered in resolving the issue of credibility raised by the allegation of physical abuse that Court reasoned:

"This disregard of the standards of decency is underlined by the fact that he was kept incommunicado for over three days during which the lawyer retained to represent him twice tried to see him and twice was refused admission. A photographer was admitted at once; but his closest friend—his mother—was not allowed to see him for over five days after his arrest. It is said that these events are not germane to the present problem because they happened after the confession was made. But they show such a callous attitude of the police towards the safeguards which respect for ordinary standards of human relationships compels that we take with a grain of salt their present apologia that the five-hour grilling of this boy was conducted in a fair and dispassionate manner. When the police are so unmindful of these basic standards of conduct in their public dealings, their secret treatment of a 15-year-old boy behind closed doors in the dead of night becomes darkly suspicious. The age of petitioner, the hours when he was grilled, the duration of his quizzing, the fact that he had no friend or counsel to advise him, the callous attitude of the police towards his rights combine to convince us that this was a confession wrung from a child by means which the law should not sanction." Id. 600–01, 68 S.Ct. 304.

Fundamental to the *Haley* Court's reasoning was that the subsequent conduct provided some insight in the resolution of the factual dispute as to whether appellant was physically coerced into making the statement. Here, there is no dispute as to what transpired prior to the time the statement was taken. There is no allegation of physical mistreatment or dispute as to the length of the periods of interrogation. Appellant's claim is premised

solely upon the length of time spent in police custody prior to the arraignment. Under these circumstances the time that elapsed following the confession does not promote the inquiry as to the ascertainment of the factors influencing the making of the statement. The fact of post confession delay, in and of itself, is irrelevant to the question of voluntariness, where as here it in no way reflects the events preceding the admissions. The trial judge was correct in his ruling.

EAGEN, J., joins in this dissenting opinion.