568 A.2d 953

**COMMONWEALTH of Pennsylvania**

**v.**

**Baxter J. HAWK, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 20, 1988.

Filed Jan. 9, 1990.

Stanley E. Gever, Philadelphia, for appellant.

Alan Sacks, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CIRILLO, President Judge, and BROSKY, McEWEN, DEL SOLE, MONTEMURO, BECK, TAMILIA, POPOVICH and JOHNSON, JJ.

DEL SOLE, Judge:

This is an appeal from a Judgment of Sentence entered following Appellant's conviction of robbery, theft, receiving stolen property, simple assault, possessing an instrument of crime and unlawful restraint. We determine today that this sentence must be vacated and the underlying convictions reversed because Appellant's constitutional right to a speedy trial was violated.

Appellant was arrested on March 28, 1984 and promptly incarcerated shortly after he robbed a restaurant employee at gunpoint. The 180 day mechanical run date for purposes of compliance with Pa.R.Crim.P. 1100 was September 14, 1984. On August 23, 1984, the Commonwealth filed a petition for extension of time alleging the unavailability of the trial judge. On October 10, 1984, shortly after his run date had passed, Appellant filed a petition to dismiss the charges against him based upon a violation of Rule 1100.

No action regarding the petitions was taken until July 8, 1985 when the court held a hearing on the Commonwealth's extension petition and Appellant's petition to dismiss. The date on which the hearing was finally held was 478 days after Appellant's arrest and 298 days after the expiration of the 180 day period set forth in Rule 1100. At the close of the hearing the court granted the Commonwealth's Petition for extension and denied Appellant's request for dismissal of the charges. Trial was held on June 5, 1986 following further postponements which are not pertinent to our review of Appellant's claim.

Appellant objects to the delay in bringing his case to trial which occurred following the Commonwealth's request for an extension. He contends that the failure to consider the Commonwealth's request for nearly 300 days resulted in a violation of Rule 1100 and a denial of his constitutional right to a speedy trial.

Rule 1100 was adopted by our supreme court pursuant to its supervisory powers and was designed to be an administrative method which would seek to protect the constitutional guarantee of a speedy trial for a criminal defendant. *Commonwealth v. Monosky*, 511 Pa. 148, 511 A.2d 1346 (1986); *Commonwealth v. Mayfield*, 469 Pa. 214, 364 A.2d 1345 (1976). At the relevant time period, the pertinent part of Rule 1100 provided:

(a)(2) Trial in a court case in which a written complaint is filed against the defendant after June 30, 1974 shall commence no later than one hundred eighty (180) days from the date on which the complaint is filed.

*     *     *     *     *     *

(c)(1) At any time prior to the expiration of the period for commencement of trial, the attorney for the Commonwealth may apply to the court for an order extending the time for commencement of trial.

*     *     *     *     *     *

(3) Such motion shall set forth the facts in support thereof, and shall be granted only upon findings based upon a

record showing that trial cannot be commenced within the prescribed period, despite due diligence by the Commonwealth and, if the delay is due to court's inability to try the defendant within the prescribed period, upon findings based upon a record showing the causes of the delay and the reasons why the delay cannot be avoided.

Although the 180 day period of Rule 1100 was set forth to "act as a stimulant to those entrusted with the responsibility of managing court calendars", *Commonwealth v. Hamilton*, 449 Pa. 297, 308, 297 A.2d 127, 133 (1972), it was not intended to be inflexible. *Commonwealth v. Mayfield, supra.* The Rule itself, and caselaw which has interpreted it, have permitted certain conditions to justify an extension of the 180 day time period in which an accused must be brought to trial. A realistic approach has been adopted which has recognized delays attributable to court administration where the record shows:

> (1) the due diligence of the prosecution, and (2) certification that trial is scheduled for the earliest date consistent with the court's business; provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the causes of the court delay and the reasons why the delay cannot be avoided.

*Commonwealth v. Mayfield*, 469 Pa. at 222, 364 A.2d at 1349–1350.

The delay which is of concern in the instant case was found to be justified by the trial court because of such scheduling problems. The difficulties with the court's calendar were cited as justification for both the Commonwealth's inability to try Appellant within the 180 day period and the court's inability to hold a hearing on the Commonwealth's extension petition within that same time frame. At the July 8th hearing Appellant represented himself and was informed by the court:

> In this courtroom under the individual calendar cases assigned to this Court, the cases must stay in this courtroom except for some slight exceptions that is when I

recuse myself because of an appearance of unfairness or something like that. And since it must stay in my Court then as the Assistant District Attorney pointed out, we call cases in the earliest run dates first. This case is now listed for today because it was the earliest run date consistent with the calendar that I have.

The Commonwealth has exercised due diligence by filing a Petition to Extend which would authorize us to have a hearing today as to whether or not it should be extended.

The Commonwealth has no control over when cases are listed in this courtroom. They too are on the same notice that defense are. We call them in turn and if they're not ready we take the appropriate action as we do with the defense so that under the circumstances we are now in September of '84 cases. This is July of '85 so that in effect although it is 10 months behind it is the earliest possible date that this court could hear your case.

N.T. 7/8/85 at 24–25.

The Court also remarked on the "gamble" which arises when the hearing on the Commonwealth's petition is not held within the 180 day period.

THE COURT: Well, what the Court says, they can gamble but if I denied their Petition to Extend then they're out of the ballgame today but they have a right to gamble and that is what they have done. They have gambled that I was going to—see, we can't even take time to hear all of the Petitions to Extend immediately because while we're hearing the Petitions to Extend some poor soul is sitting in jail saying they're not trying me in 180 days.

THE DEFENDANT: Mine is 477 days, that is ridiculous.

THE COURT: That is your opinion, however, I suggest that you read, if you want to take this down, Commonwealth versus Crawley ... where the Court said that where the Commonwealth has exercised due diligence and the Court has made reasonable efforts to bring it to trial, then that is satisfactory.

So, I will grant the Commonwealth's Petition to Extend and extend to July 31st.

I will deny your Petition to Discharge.

N.T. 7/8/85 at 32–33.

The "gamble" of which the court spoke has been frequently identified by the courts. In *Commonwealth v. Yant*, 314 Pa.Super. 442, 448–449, 461 A.2d 239, 242–243 (1983) this court cited to an earlier decision and stated:

> As footnote 2 in *Metzer* explains: 'The risk is obvious: if the court denied the extension after the period had run, the Commonwealth is prevented from bringing the accused to trial. If the petition is denied promptly, the Commonwealth may nonetheless be able to try the accused within the period. . . .' This repeated admonition applies to Yant's case, for the hearing court was put in the position of having to grant the Petition to Extend or dismiss the accused. This circumstance inevitably puts pressure on the hearing court to grant the petition.

citing *Commonwealth v. Metzger*, 240 Pa.Super. 712, 360 A.2d 227 (1977).

In *Yant* a four month delay occurred between the time the Commonwealth filed its petition to extend and the date on which a hearing was held on the petition. At the Commonwealth's request the hearing date was postponed on five occasions. One such continuance was not accompanied by an excuse; two were due to the district attorney's vacation schedule; one was necessitated by the judge's illness, and another due to the fact that the case was not entered on the court list. In view of these explanations, the repeated continuances and the totality of the circumstances, the *Yant* court ruled that the appellant had to be discharged based on a violation of Rule 1100.

The Commonwealth asserts that the instant case differs from those in which there is an unexplained delay or the Commonwealth fails to appear. The Commonwealth contends that Appellant is not entitled to be discharged because he has not demonstrated prejudice and because the delay at issue in this case was necessitated, as stated by the

trial court, due to a congested court docket which would not permit an earlier hearing date. In support of this position the Commonwealth cites to the decision referred to by the court at the July 8th hearing, *Commonwealth v. Crowley*, 502 Pa. 393, 466 A.2d 1009 (1983).

Although the *Crowley* decision further confirmed that Rule 1100 was not to be unbending where a crowded criminal docket necessitated a delay, it is important to note that the supreme court did not grant a blanket exception for judicial delay and rule that any amount of delay will be sanctioned where that delay is caused by scheduling difficulties. The *Crowley* court stated:

> Rule 1100 should not be construed to require Common Pleas Court with backlogged criminal dockets to devote all their administrative and judicial resources to guarantee that every defendant is tried within the period prescribed by the Rule. It should be sufficient for the court to establish that it has devoted a reasonable amount of its resources to the criminal docket and that it scheduled the criminal trial at the earliest possible date consistent with the court's business. While the trial court may be required to rearrange its docket, if possible, when judicial delay has caused a lengthy postponement beyond the period prescribed by Rule 1100, or one that implicates the constitutional right to a speedy trial, it should not be required to do so to avoid a delay of under 30 days as here.

*Id.* at 402–403, 466 A.2d at 1014.

In a footnote to this paragraph, the court added:

> There is a qualitative difference in permitting congestion to excuse short delays. Short delays do not seriously implicate a defendant's Sixth Amendment right to a speedy trial under *Barker v. Wingo* nor do they provide a disincentive for states to remedy congestion.

*Id.* at 403 n. 9, 466 A.2d at 1014 n. 9.

Thus, while delays caused by a crowded criminal docket will be permitted and will justify the denial of a motion to dismiss under Rule 1100, lengthy postponements past the

run date may result in a violation of the accused's speedy trial rights. The delay in this case is clearly in excess of the 30 days mentioned in the *Crowley* decision and in our view cannot be labeled as a "short delay." Here the hearing was not held on the Commonwealth's Petition to Extend and Appellant's Petition to Dismiss until 298 days after the expiration of the 180 day period. This was 478 days after Appellant was first charged with criminal conduct and incarcerated. In view of the length of the delay we will next examine its implications on the Appellant's constitutional right to a speedy trial.

While Rule 1100 is designed to aid the implementation of the constitutional right to a speedy trial, the constitutional guarantees continue to provide a separate basis for asserting a claim of undue delay in appropriate cases. *Jones v. Commonwealth*, 495 Pa. 490, 434 A.2d 1197 (1981). Violation of such a right may be claimed under either the Sixth Amendment to the United States Constitution, or Article I, Section 9 of the Pennsylvania Constitution. In either event, the constitutional right to ensure that undue delay does not postpone trial protects both the accused and the general public. The public's interest in the prompt disposition of criminal trials is to ensure that the means of proving the charge are preserved, the deterrent effect of prosecution and conviction are evident, and to avoid, in some cases, an extended period of pretrial freedom by the defendant during which time other crimes may be committed or witnesses intimidated. *Commonwealth v. Mayfield, supra.* Likewise an accused looks toward the protection offered by the constitutional guarantee to a speedy trial to prevent undue and oppressive incarceration prior to trial, to minimize anxiety and concern accompanying public accusation, and to limit the possibilities that a lengthy delay will impair the defense. *Commonwealth v. Kirk*, 220 Pa.Super. 115, 283 A.2d 712 (1971).

In analyzing a claimed violation of constitutional speedy trial rights a balancing test first enunciated in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), is

to be applied. This test which weighs the conduct of both the prosecution and the defendant consists of four factors. The first consideration is the length of the delay. Delay which is "presumptively prejudicial" acts as a "triggering mechanism" for further inquiry. "It then becomes necessary to engage in the 'difficult and sensitive' process of balancing against the delay the reason for the delay, the defendant's assertion of his right, and the prejudice to the defendant resulting from the delay." *Commonwealth v. Sheeley*, 230 Pa.Super. 160, 164, 326 A.2d 574, 576 (1974), *citing Barker v. Wingo, supra.*

Although the Court in *Barker v. Wingo* found the length of the delay to be critical, it did not hold that the right can be quantified into a specified number of days or months. Instead, the court ruled that the states were free to prescribe a reasonable period of time in which to bring an accused to trial. Our supreme court in Rule 1100 has set that time period, at 180 days. Appellant was not tried within that time span and the delay beyond the 180 day period, in which Appellant awaited a decision on the Commonwealth's petition to extend the time for commencement of trial, was substantial (298 days). In our view, this time period is sufficient to trigger further inquiry.

The next factor to be considered is the reason for the delay. In this case the responsibility for the delay rested with the Court and the Commonwealth and could not in any way be attributed to Appellant. The trial court clearly determined that the reason for the delay was due to the crowded criminal docket. While such a delay cannot be viewed as critically as one which was deliberate and intended to prejudice the defense, it cannot be ignored because it remains the responsibility of the government.

The lengthy delay in this case, coupled with Appellant's lack of responsibility for it, must also be considered in light of the fourth factor: whether the accused made a timely assertion of his speedy trial rights. In this case such a claim was timely made. Less than one month after the run date Appellant filed a Motion to Dismiss; and, Appellant

continued to pursue this claimed constitutional violation at the July 8, 1985 hearing.

The fourth factor, prejudice, is contested by the Commonwealth. It maintains that Appellant suffered no prejudice because he requested later continuances and because he was given credit on his sentence for the time he was incarcerated prior to trial.

First, it must be mentioned that *"Barker v. Wingo,* expressly rejected the notion that an affirmative demonstration of prejudice was necessary to prove a denial of the constitutional right to a speedy trial." *Moore v. Arizona,* 414 U.S. 25, 26, 94 S.Ct. 188, 189, 38 L.Ed.2d 183 (1973). Each factor set forth by the Court in *Barker v. Wingo* must be considered and weighed together. None of the final three factors, including possible prejudice to the appellant, is either necessary or sufficient to conclude that an accused was deprived of a speedy trial.

Secondly, we find that Appellant was indeed prejudiced as a result of his pretrial incarceration. There is no claim in this case that Appellant was incarcerated on an unrelated charge; rather, the record indicates that Appellant remained incarcerated for 478 days awaiting the court's consideration of the Commonwealth's request to extend the time for trial. And, while Appellant was ultimately convicted of the charges brought against him and sentenced, with credit given for time served, this fact does not lessen the anxiety he most certainly experienced while awaiting his fate. As noted in *Commonwealth v. Williams,* 457 Pa. 502, 507, 327 A.2d 15, 17 (1974), "[I]t would be pure sophistry to argue that his delay did not cause the accused and his family severe anxiety." We must also ask what possible remedy could justly be found if Appellant had ultimately not been convicted of the crimes charged. We do not believe that employing the Commonwealth's hindsight evaluation is appropriate because it does not serve to further the purpose of the speedy trial rule. Finally, we reject the Commonwealth's assertion that our decision must turn on the fact that Appellant made later requests to postpone

trial. Such information is irrelevant to an examination of the delay at issue.

Upon balance we conclude that in light of the length of the delay, the Appellant's prompt affirmative assertion of his speedy trial rights, the Appellant's lack of responsibility for the delay and the fact that Appellant was incarcerated during the period at issue, the Appellant was denied his constitutional right to a speedy trial.

Accordingly, we vacate Appellant's conviction and sentence. Jurisdiction is relinquished.

CIRILLO, President Judge, and TAMILIA, J., file dissenting statements.

JOHNSON, J., files a dissenting opinion joined by BROSKY, J.

CIRILLO, President Judge, dissenting:

I respectfully dissent for the reasons set forth in my dissenting opinion to the per curiam order of this court filed on July 26, 1989. *Commonwealth v. Hawk*, 386 Pa.Super. 183, 562 A.2d 858 (1989). However, had the order I proposed in my dissenting opinion, *see supra*, been adopted by a majority of this court and had the record been properly supplemented with the July 8, 1985 hearing transcript, I would have joined the dissenting opinion authored by Judge Johnson.

TAMILIA, Judge, dissenting:

I respectfully dissent to the majority's decision vacating appellant's conviction and sentence. I perceive no error in the conduct of the trial which should result in reversal and on the issue upon which the majority focused in reversing the appellant's conviction and discharging him, denial of a speedy trial, I believe the majority is in error. The majority appears to rely on time alone from the point of filing of the complaint to time of trial as dispositive of this issue. Such reliance is improper where there is no showing of prejudice by appellant and the Commonwealth was not at fault in

causing the delay. The court properly held and the record establishes without contradiction that the delay was due to an overwhelmed court schedule and the calendering practices of the Court of Common Pleas of Philadelphia. *Commonwealth v. Crowley*, 502 Pa. 393, 466 A.2d 1009 (1983), clearly put to rest any possibility that the Superior Court could limit the time which a trial court had to bring a defendant to trial. In that case, the Supreme Court, reversing the Superior Court, *Commonwealth v. Crowley*, 281 Pa.Super. 26, 421 A.2d 1129 (1980), and commenting on a Concurring Opinion in *Commonwealth v. Coleman*, 477 Pa. 400, 383 A.2d 1268 (1978), which reversed Superior Court and would have adopted a rule espoused by this Court in *Commonwealth v. Coleman*, 241 Pa.Super. 450, 361 A.2d 870 (1976), which would have required the trial court to change its procedure if it could not schedule cases within 180 days, pointedly rejected it. The Supreme Court, in *Crowley, supra,* said:

> That view, which a majority of this Court declined to adopt in *Coleman,* is implicitly followed by the Superior Court here. It ignores the realities of crowded criminal and civil dockets which overburdened Common Pleas courts must deal with on a day-to-day basis. *Rule 1100 was designed to promote the administration of criminal justice within the context of our entire judicial system,* not to render that system hostage to its own closed logic. The goals of efficiency and ease of administration which Rule 1100 serves are worthy; they should not be exalted at the expense of justice. Thus, in interpreting our Rule 1100, we must throw away the stopwatch and pick up the scales of justice. *See, e.g., Commonwealth v. Blady,* 492 Pa. 285, 424 A.2d 864 (1980) (dissenting opinion, Larsen, J., in which Flaherty, J. joined).

*Id.,* 502 Pa. at 402, 466 A.2d at 1014 (emphasis added). In so stating, I believe the Supreme Court has foreclosed any further consideration of this issue by Superior Court. The regulation of trial court procedures appears to be a matter

entirely within the purview of the Supreme Court under the doctrine of the Unified Judiciary, promulgated by the amendments to the Pennsylvania Constitution on April 23, 1968. I would, therefore, affirm the judgment of sentence.

JOHNSON, Judge, dissenting:

In June 1986, a jury convicted Baxter Hawk of robbery, theft by receiving stolen property, simple assault, possessing instrument of crime and unlawful restraint. The Honorable Eugene H. Clarke, Jr. sentenced him to five to ten years' imprisonment on the robbery count.

On this appeal, Hawk contends: (1) lack of Commonwealth compliance with Pa.R.Crim.P. 1100, (2) denial of his right to a speedy trial, and (3) improper admission of an oral statement. Following my review of the briefs of the parties and the record, I conclude that each of the three issues is without merit. The majority would vacate Hawk's conviction, and presumably direct Hawk's discharge, based upon a claimed denial of Hawk's constitutional right to a speedy trial. Given the total lack of argument by Hawk on this issue in his brief, as set forth later in this opinion, I would affirm the judgment of sentence. Therefore, I dissent.

On March 28, 1984, Hawk entered Bookbinder's Restaurant at 15th and Locust Streets in Philadelphia. He ordered and drank a cup of coffee. He then, at gunpoint, robbed employees of cash from the register and fled in a taxicab. A restaurant employee pursued Hawk in a second cab. The employee was on the scene, and identified Hawk, as police arrested him and confiscated the long-barrelled gun used in the robbery.

At issue two, concerning the right to a speedy trial, Hawk's one-page argument, Brief for Appellant, page 21, is devoid of citation of any authority. He purports to "incorporate ... all relevant facts and arguments set forth in the preceding paragraphs"—presumably, the first section of the Argument, pages 10–20—without specifying which facts or arguments are relevant to this contention. His sole factual allegation that "not one day of the long delay ...

was the result of any action by Defendant or caused by Defendant in any way" does not suffice to afford relief. *Commonwealth v. Cooley*, 484 Pa. 14, 19–20, 398 A.2d 637, 640 (1979). *Commonwealth v. Sanford*, 299 Pa.Super. 64, 445 A.2d 149 (1982). Pa.R.A.P. §§ 2101, 2119. The second issue is without merit.

At issue three, Hawk again sets forth no authority to support his contention that the oral statement given to Detective Robert Egenlauf on the night of Hawk's arrest should have been suppressed. Both Hawk and the trial judge rely on the Suppression Hearing Notes of Testimony of June 2, 1986 for resolution of this point. Based upon that transcript, and the arguments contained in the briefs, I find no abuse of discretion by the distinguished trial judge. *Commonwealth v. Lark*, 505 Pa. 126, 129, 477 A.2d 857, 859 (1984) (scope of review); *Commonwealth v. Lowenberg*, 481 Pa. 244, 251, 392 A.2d 1274, 1277 (1978) (voluntary statement); *Commonwealth v. Johnson*, 299 Pa.Super. 172, 175–176, 445 A.2d 509, 511 (1981). Again, I would affirm the trial court on this issue.

Turning to the primary issue, which prompted en banc reargument, Hawk seeks to argue that the Commonwealth lacked due diligence on its petition to extend the time of trial and failed to establish a record sufficient to justify an extension. Based upon my review of the Rule 1100 Petition Hearing Transcript, July 8, 1985, I find no error by the trial court in granting the petition. I, therefore, must dissent.

From the Rule 1100 Petition Hearing Transcript, the following facts were before Judge Clarke. The complaint in this case was filed on March 18, 1984. Following the preliminary hearing and pretrial conference, discovery was completed and the case was placed in the July 2, 1984 "ready-pool" of Judge Clarke. The Commonwealth was ready at the first listing of the preliminary hearing on March 28, 1984 and remained ready throughout this matter up until July 8, 1985. Because of the individual calendar system in Philadelphia County, the matter had to be sched-

uled according to the court's calendar. Hearing Transcript, pages 18–19.

The Commonwealth had no control over the scheduling of cases in Judge Clarke's ready-pool, once they were placed in the pool. Once the case was scheduled before Judge Clarke and in Judge Clarke's ready-pool, it could not be transferred to another court in order to be tried at an earlier date. July 8, 1985 was the earliest possible date in the first listing for trial once the matter was scheduled in the ready-pool. The Commonwealth's petition for extension under Rule 1100 was timely filed on August 23, 1984. Hearing Transcript, pages 19, 20.

As the majority correctly points out, Judge Clarke found as fact all of the above, along with his conclusion that July 8, 1985 was the earliest trial date consistent with his calendar, since cases are called in turn, with the earliest run date being called first. Hearing Transcript, page 24.

Rule 1100(c)(3) provided as follows at all times material to this appeal:

(c)(3) Such motion shall set forth facts in support thereof, and shall be granted only upon findings based upon a record showing that trial cannot be commenced within the prescribed period despite due diligence by the Commonwealth and, if the delay is due to the court's inability to try the defendant within the prescribed period, upon findings based upon a record showing the causes of the delay and the reasons why the delay cannot be avoided.

The Commonwealth's petition filed pursuant to Rule 1100(c) alleged that the case had been placed in the ready-pool and continued to July 2, 1984 for a five-day jury trial. It further alleged that Judge Clarke was ill and unavailable from July 5, 1984 through August 3, 1984 and would be on vacation and unavailable from August 6, 1984 through September 10, 1984. Neither Hawk nor the majority seriously dispute that Judge Clarke's calendar was full or that the case was listed for the earliest available date consistent with Judge Clarke's calendar. I conclude that the requirements of Rule 1100(c)(3) were satisfied, that the Common-

wealth did exercise due diligence and that the causes of the delay and the reasons why that delay was unavoidable are, in fact, included in the record before this court. *Commonwealth v. Crowley*, 502 Pa. 393, 402–03, 466 A.2d 1009, 1013–14 (1983); *Commonwealth v. Bolden*, 336 Pa.Super. 243, 250–51, 485 A.2d 785, 789 (1984); *Commonwealth v. Briggman*, 325 Pa.Super. 333, 337–38, 472 A.2d 1145, 1148–49 (1984).

Moreover, the delay between August 1984, when the petition was filed, and July 1985, when the case was called for a hearing on the petition and trial, would not support discharge under the rule absent a showing of prejudice. Our case law is clear that an unexplained delay, without a showing of prejudice, does not offend the rule. *Commonwealth v. Williams*, 310 Pa.Super. 501, 509, 456 A.2d 1047, 1051 (1983). As to the element of prejudice, I find none from the record.

The majority cites only to *Commonwealth v. Williams*, 457 Pa. 502, 327 A.2d 15 (1974) to support its conclusion that Hawk sustained prejudice due to the delay in this case. *Williams* is readily distinguishable. James Williams had been arrested on a voluntary manslaughter charge but was not tried and convicted until three and one-half years later. In the interim, one potential defense witness had died, two could not be located due to the passage of time, and a fourth—an eyewitness—believed her memory had dimmed over the three and one-half year period and she would not be able to testify fully on behalf of the defendant. Moreover, the Commonwealth conceded in *Williams* that the length of the pretrial delay was presumptively prejudicial. 457 Pa. at 507, 327 A.2d at 17–18.

In the case now before us, Hawk requested a continuance on the date of the hearing on the Rule 1100 petition. He advised the court that his defense was going to be ambulatory automatism and that he would need expert medical help to prepare for trial. Hearing Transcript, pages 33–42. At that time, Hawk agreed to an extension to November 21, 1985, thirty days after the then-scheduled trial date. The

trial was again postponed, in late 1985, following appointment of new defense counsel. Nowhere in the record is there any suggestion that any of the delays had an adverse effect upon Hawk's ability to prepare for trial or on his own well being. I therefore reject the majority's conclusion that, within the context of a sixth amendment speedy trial analysis, Hawk has sustained any prejudice warranting discharge.

The trial court, itself, was solely responsible for the scheduling of the hearing on the petition to extend. The delay was related to the backlog within the trial division, with the oldest cases being scheduled for disposition first. I find no lack of due diligence by the Commonwealth and I find no error in the court having granted the Rule 1100 petition. Likewise, I find no merit in the claimed denial of the constitutional right to a speedy trial or in the admission of the defendant's oral statement to the police while in custody. The judgment of sentence should be affirmed. Hence, this dissent.

BROSKY, J., joins.