635 A.2d 1091

COMMONWEALTH of Pennsylvania, Appellant,

v.

Thomas DeBLASE, Appellee.

Superior Court of Pennsylvania.

Argued Sept. 15, 1993.

Filed Jan. 7, 1994.

Application for Reargument or Reconsideration Denied Feb. 23, 1994.

Mary Macneil Killinger, Executive Asst. Dist. Atty., Norristown, for Com., appellant.

Samuel C. Stretton, West Chester, for appellee.

Before WIEAND, TAMILIA and HESTER, JJ.

WIEAND, Judge.

In this appeal we have been asked to review a trial court order which dismissed charges of murder, robbery and criminal conspiracy against Thomas DeBlase on grounds that his constitutionally guaranteed rights to due process and a speedy trial had been violated.

The dead body of David Swinehart, a wealthy real estate developer, was found on January 15, 1982, in a vehicle which had been parked in an alley in Pottstown, Montgomery County. Death had been caused by bludgeoning. Charges were not filed until May 11, 1985, when DeBlase, the victim's nephew, his brother Jeffrey,[1] Terry Lee Maute[2] and Arthur Hall[3] were arrested for the crime. A preliminary hearing was held for DeBlase on May 31, 1985, after which the charges of murder, robbery and conspiracy were returned to court. DeBlase was arraigned on July 24, 1985.

A portion of the Commonwealth's evidence consisted of intercepted conversations in which DeBlase had been a participant. Some conversations had been intercepted by an electronic wiretap and others by virtue of a body wire which had

1. Jeffrey DeBlase was tried and convicted in September, 1985 in connection with the killing of his uncle and is currently serving a sentence of life imprisonment.

2. Terry Lee Maute was tried in October, 1985, and presented an alibi defense. He was acquitted of charges relating to the murder of David Swinehart.

3. Arthur Hall entered a plea of guilty, on May 5, 1993, to a charge of robbery.

been worn consensually by DeBlase's brother, Jeffrey. DeBlase filed a petition to suppress this evidence and, after hearing before the Honorable Horace Davenport, was successful in suppressing evidence obtained through both the wiretap and the body wire. The Commonwealth appealed to the Superior Court which, on September 22, 1986, affirmed the suppression of the wiretap evidence but reversed the suppression of statements recorded as a result of the body wire. See: *Commonwealth v. DeBlase,* 357 Pa.Super. 71, 515 A.2d 564 (1986). A petition for allocatur was granted by the Supreme Court; but, on January 22, 1988, the appeal was dismissed as having been improvidently granted. See: *Commonwealth v. DeBlase,* 517 Pa. 323, 536 A.2d 339 (1988).

Upon remand, trial was set for June 27, 1988. DeBlase, however, retained present counsel, who filed a second motion to suppress the body wire evidence on grounds that the evidence had been obtained in violation of Article I, Section 8, of the Pennsylvania Constitution as interpreted by the Superior Court in *Commonwealth v. Schaeffer,* 370 Pa.Super. 179, 536 A.2d 354 (1987) (en banc).[4] This petition was also heard by Judge Davenport who, in reliance on the decision in *Commonwealth v. Schaeffer, supra,* suppressed the body wire evidence on June 23, 1988. The Commonwealth appealed.[5] The Superior Court, on April 5, 1989, reversed the suppression order and remanded for reconsideration in light of appellate court decisions in *Commonwealth v. Blystone,* 519 Pa. 450, 549 A.2d 81 (1988), *aff'd in Blystone v. Pennsylvania,* 494 U.S. 299, 110 S.Ct. 1078, 108 L.Ed.2d 255 (1990); *Commonwealth v. Rodriguez,* 519 Pa. 415, 548 A.2d 1211 (1988), and *Commonwealth v. Brion,* 381 Pa.Super. 83, 552 A.2d 1105

4. Allocatur was granted in this case by the Supreme Court, which heard oral argument on October 26, 1989. The case was resubmitted on briefs on August 28, 1992, and a decision came down on June 1, 1993, when an equally divided Supreme Court affirmed the Superior Court's order. See: *Commonwealth v. Schaeffer,* (J. 183–1989; filed June 1, 1993). On June 25, 1993, however, the Supreme Court granted reargument, and the case is still pending.

5. While the appeal was pending, DeBlase filed a petition to be released on bail, but the trial court, after hearing, denied the petition. Similar petitions to the Superior and Supreme Courts were also unsuccessful.

(1989), *allocatur granted,* 534 Pa. 652, 627 A.2d 730 (1993).
See: *Commonwealth v. DeBlase,* 390 Pa.Super. 651, 561 A.2d
817 (1989). On April 26, 1989, DeBlase filed a petition in the
Supreme Court for allowance of appeal.[6]

After twenty-one (21) months had elapsed without a decision
on his petition for allowance of an appeal to the Supreme
Court, DeBlase filed in the Supreme Court, on January 24,
1991, an Emergency Petition for Dismissal on grounds that his
rights to a speedy trial and due process had been violated by
delay in the appellate process. When the Supreme Court did
not act on this petition, DeBlase filed in the United States
District Court for the Eastern District of Pennsylvania, on
April 23, 1991, a petition for writ of habeas corpus. This
petition was assigned to a federal magistrate for review.

On August 26, 1991, DeBlase filed in the federal court a
petition for bail and, following hearing, was released on re-
strictive bail in November, 1991, after six and one-half (6½)
years in prison. DeBlase continues on bail, but subject to a
curfew and electronic monitoring.

On December 2, 1992, the federal magistrate filed a report
containing his conclusion that DeBlase's right to a speedy trial
had been violated. He recommended that the charges against
DeBlase be dismissed unless he be brought to trial within one
hundred twenty (120) days. The prosecution then filed in the
Supreme Court of Pennsylvania a petition for extraordinary
relief in which it urged the Court to act on DeBlase's petition
for allocatur. On December 28, 1992, three years and eight
months after the petition for allowance of an appeal had been
filed, the Supreme Court entered an order denying the peti-
tion for allocatur without prejudice and denying the emergen-
cy petition as moot. *Commonwealth v. DeBlase,* 533 Pa. 617,
619 A.2d 699 (1992).

6. Following the filing of a petition for allowance of an appeal, DeBlase
filed in the trial court a petition to dismiss pursuant to Pa.R.Crim.P.
1100. The trial court refused to act on the petition, however, because
of the pendency of the petition for allowance of an appeal in the
Supreme Court.

DeBlase then filed a petition in the federal court seeking to stay the criminal proceedings in the state court pending a determination of his petition for habeas corpus. This petition was denied.[7] Also denied was the petition for habeas corpus. This order was appealed by DeBlase to the Court of Appeals for the Third Circuit.[8]

When the case was returned to the trial court by the Pennsylvania Supreme Court, DeBlase filed an omnibus pretrial motion in which he requested the trial court, inter alia, to dismiss the charges on grounds that his rights to a speedy trial and to due process of law had been violated by the delay in commencing trial. After hearing,[9] the trial court, on April 19, 1993, granted the motion and discharged the defendant. The Commonwealth appealed.

Both the Sixth Amendment to the Constitution of the United States and Article I, § 9, of the Pennsylvania Constitution provide that in all criminal prosecutions the accused shall have a right to a speedy trial. In *Klopfer v. North Carolina*, 386 U.S. 213, 222–223, 87 S.Ct. 988, 993, 18 L.Ed.2d 1, 7–8 (1967), the United States Supreme Court held that the right to a speedy trial, as guaranteed by the Sixth Amendment, is fundamental and is applicable to the states by virtue of the Fourteenth Amendment. See: *Dickey v. Florida*, 398 U.S. 30, 37–38, 90 S.Ct. 1564, 1568–1569, 26 L.Ed.2d 26, 31–32 (1970). See also: *Redd v. Sowders*, 809 F.2d 1266, 1268 (6th Cir.1987); *Commonwealth v. Reinhart*, 466 Pa. 591, 597, 353 A.2d 848, 852 (1976), *cert. denied*, 429 U.S. 886, 97 S.Ct. 238, 50 L.Ed.2d 167 (1976); *Commonwealth v. Ditzler*, 443 Pa. 73, 79, 277 A.2d 336, 337 (1971). In *Commonwealth v. Hailey*, 470 Pa. 488, 493–494, 368 A.2d 1261, 1264 (1977), the Pennsylvania Supreme Court observed that the right to a speedy trial under Article I, § 9, of the Pennsylvania Constitution is co-extensive

7. A separate stay petition was also denied by the Court of Appeals for the Third Circuit.

8. This appeal was dismissed at DeBlase's request after the trial court dismissed the charges pursuant to the order from which the present appeal has been taken.

9. Appellee's petition was heard by the Honorable Samuel W. Salus, II.

with the guarantee of the Sixth Amendment of the United States Constitution. Accord: *Commonwealth v. Glass*, 526 Pa. 329, 334–335, 586 A.2d 369, 371–372 (1991); *Commonwealth v. Smith*, 524 Pa. 72, 78–79, 569 A.2d 337, 340 (1990); *Commonwealth v. Lee*, 460 Pa. 374, 379, 333 A.2d 773, 776 (1975).

In the landmark decision of *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), the Supreme Court recognized that "the right to speedy trial is a more vague concept than other procedural rights [and that] [i]t is ... impossible to determine with precision when the right has been denied." *Id.* at 521, 92 S.Ct. at 2187, 33 L.Ed.2d at 112. Because of the amorphous nature of the right to a speedy trial, the Court rejected the adoption of a rigid formula to determine its violation. Instead, the Supreme Court fashioned "a balancing test, in which the conduct of both the prosecution and the defendant are weighed." *Id.* at 530, 92 S.Ct. at 2191–2192, 33 L.Ed.2d at 116 (footnote omitted). This test was articulated as follows:

A balancing test necessarily compels courts to approach speedy trial cases on an **ad hoc** basis. We can do little more than identify some of the factors which courts should assess in determining whether a particular defendant has been deprived of his right. Though some might express them in different ways, we identify four such factors: Length of delay, the reason for the delay, the defendant's assertion of his right, and prejudice to the defendant.

The length of the delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity for inquiry into the other factors that go into the balance. Nevertheless, because of the imprecision of the right to speedy trial, the length of delay that will provoke such an inquiry is necessarily dependent upon the peculiar circumstances of the case. To take but one example, the delay that can be tolerated for an ordinary street crime is considerably less than for a serious, complex conspiracy charge.

Closely related to length of delay is the reason the government assigns to justify the delay. Here, too, different weights should be assigned to different reasons. A deliberate attempt to delay the trial in order to hamper the defense should be weighted heavily against the government. A more neutral reason such as negligence or overcrowded courts should be weighted less heavily but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant. Finally, a valid reason, such as a missing witness, should serve to justify appropriate delay.

Whether and how a defendant asserts his right is closely related to the other factors we have mentioned. The strength of his efforts will be affected by the length of the delay, to some extent by the reason for the delay, and most particularly by the personal prejudice, which is not always readily identifiable, that he experiences. The more serious the deprivation, the more likely a defendant is to complain. The defendant's assertion of his speedy trial right, then, is entitled to strong evidentiary weight in determining whether the defendant is being deprived of the right. We emphasize that failure to assert the right will make it difficult for a defendant to prove that he was denied a speedy trial.

A fourth factor is prejudice to the defendant. Prejudice, of course, should be assessed in the light of the interests of defendants which the speedy trial right was designed to protect. This Court has identified three such interests: (i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired. Of these, the most serious is the last, because the inability of a defendant adequately to prepare his case skews the fairness of the entire system. If witnesses die or disappear during a delay, the prejudice is obvious. There is also prejudice if defense witnesses are unable to recall accurately events of the distant past. Loss of memory, however, is not always reflected in the record because what has been forgotten can rarely be shown.

We have discussed previously the societal disadvantages of lengthy pretrial incarceration, but obviously the disadvantages for the accused who cannot obtain his release are even more serious. The time spent in jail awaiting trial has a detrimental impact on the individual. It often means loss of a job; it disrupts family life; and it enforces idleness. Most jails offer little or no recreational or rehabilitative programs. The time spent in jail is simply dead time. Moreover, if a defendant is locked up, he is hindered in his ability to gather evidence, contact witnesses, or otherwise prepare his defense. Imposing those consequences on anyone who has not yet been convicted is serious. It is especially unfortunate to impose them on those persons who are ultimately found to be innocent. Finally, even if an accused is not incarcerated prior to trial, he is still disadvantaged by restraints on his liberty and by living under a cloud of anxiety, suspicion, and often hostility.

We regard none of the four factors identified above as either a necessary or sufficient condition to the finding of a deprivation of the right of speedy trial. Rather, they are related factors and must be considered together with such other circumstances as may be relevant. In sum, these factors have no talismanic qualities; courts must still engage in a difficult and sensitive balancing process. But, because we are dealing with a fundamental right of the accused, this process must be carried out with full recognition that the accused's interest in a speedy trial is specifically affirmed in the Constitution.

*Barker v. Wingo, supra* 407 U.S. at 530–533, 92 S.Ct. at 2192–2193, 33 L.Ed.2d at 116–119 (citation and footnotes omitted).

In the instant case, appellee was arrested on May 11, 1985, and the case was called to trial on April 19, 1993, almost eight years later. The Commonwealth concedes that such a delay is presumptively prejudicial under *Barker v. Wingo, supra*. The Commonwealth also concedes that appellee has asserted his right to a speedy trial diligently and consistently. These two factors of the *Barker v. Wingo* balancing test, therefore, will be weighed in appellee's favor.

█ The delay in the instant case is almost entirely attributable to the litigation of pre-trial suppression motions and the appellate review of trial court rulings thereon. During the period between appellee's arrest and April, 1989, appellee filed two suppression motions, both of which were granted by the trial court. The Commonwealth during the same period twice filed appeals in the Superior Court and was successful, on both occasions, in obtaining reversal of the trial court's suppression orders. The Commonwealth asserts, therefore, that the delay prior to April, 1989 was reasonable and should not be weighed against the Commonwealth.

With respect to delays occasioned by pre-trial proceedings, the Pennsylvania Supreme Court has observed, "[w]e believe that a reasonable amount of time consumed by the disposition of motions and interlocutory appeals not made for purposes of delay, regardless of who is the moving party, is justifiable delay." *Commonwealth v. Ware,* 459 Pa. 334, 347, 329 A.2d 258, 264–265 (1974). See also: *Jones v. Commonwealth,* 495 Pa. 490, 500–502, 434 A.2d 1197, 1202–1203 (1981); *Commonwealth v. Myers,* 472 Pa. 200, 208, 371 A.2d 1279, 1282–1283 (1977). In *United States v. Loud Hawk,* 474 U.S. 302, 106 S.Ct. 648, 88 L.Ed.2d 640 (1986), the United States Supreme Court said that, "[g]iven the important public interests in appellate review, it hardly need be said that an interlocutory appeal by the Government ordinarily is a valid reason that justifies delay." *Id.* at 315, 106 S.Ct. at 656, 88 L.Ed.2d at 654 (citation omitted). See also: *Ringstaff v. Howard,* 885 F.2d 1542, 1544 (11th Cir.1989) (en banc), *cert. denied,* 496 U.S. 927, 110 S.Ct. 2622, 110 L.Ed.2d 643 (1990); *United States v. Guerrero,* 756 F.2d 1342, 1349–1350 (9th Cir.1984), *cert. denied,* 469 U.S. 934, 105 S.Ct. 334, 83 L.Ed.2d 270 (1984). Moreover, "reversals by the Court of Appeals are prima facie evidence of the reasonableness of the Government's action." *United States v. Loud Hawk, supra,* 474 U.S. at 316, 106 S.Ct. at 656, 88 L.Ed.2d at 655. See also: *United States v. Layton,* 855 F.2d 1388, 1412 (9th Cir.1988), *cert. denied,* 489 U.S. 1046, 109 S.Ct. 1178, 103 L.Ed.2d 244 (1989).

· Therefore, we agree with the Commonwealth that the delay between appellee's arrest on May 11, 1985, and the Superior Court's decision on the Commonwealth's second interlocutory appeal on April 5, 1989, cannot be weighed against the Commonwealth for purposes of determining a speedy trial violation. It follows that the primary focus of our review, as both parties agree, must be the delay of three (3) years and eight (8) months between April 26, 1989, and December 28, 1992.

It was during this period that appellee's Petition for Allowance of Appeal lay dormant in the Supreme Court, and it was this delay which the trial court found to have violated appellee's due process and speedy trial rights. The court reasoned as follows:

> [T]he delay in this case was due to the court system and it cannot. be blamed on DeBlase as the Commonwealth was prone to do. In fact, the delay was due to failure of the appellate court to set time constraints for timely resolution of an appellate matter, particularly this case which involved a viable and assertable pretrial issue. This is not to blame the Commonwealth for the incurable position it was placed in by the Pennsylvania Supreme Court which ignored any semblance of appellate docket control. This very fact, however, cannot turn back the tides of time which are unchallenged and whose bare facts irrevocably point to excessive delays amounting to speedy trial and due process violations.

Trial Court Opinion at p. 22.

The United States Supreme Court, in *United States v. Loud Hawk, supra,* addressed the effect of delay caused by a defendant's interlocutory appeal and observed:

> In that limited class of cases where a pretrial appeal by the defendant is appropriate, delays from such an appeal ordinarily will not weigh in favor of a defendant's speedy trial claims. A defendant with a meritorious appeal would bear the heavy burden of showing an unreasonable delay caused by the prosecution in that appeal, or a wholly unjustifiable delay by the appellate court. A defendant who resorts to an

interlocutory appeal normally should not be able upon return to the district court to reap the reward of dismissal for failure to receive a speedy trial.

*Id.,* 474 U.S. at 316, 106 S.Ct. at 656–657, 88 L.Ed.2d at 655 (citation omitted). The inference to be drawn from this is that an unjustifiable delay by an appellate court in resolving an interlocutory appeal may be sufficient to constitute unreasonable delay. Where it is the defendant who has put the appeal process in gear, however, he will not readily be rewarded by dismissal of the charges because of delay caused by the appellate process.

In the instant case, the reason for the delay in the Supreme Court's disposition of the defendant's petition for allocatur does not appear. The issue which the defendant asked the Supreme Court to review was whether the use of a body wire with only the consent of the wearer violated the right of privacy, under Article I, § 8, of the Pennsylvania Constitution, of a non-consenting person whose conversation was recorded. A similar issue was presented in *Commonwealth v. Schaeffer, supra,* where the Supreme Court had granted allocatur on December 2, 1988. A decision was not rendered until June 1, 1993 when an equally divided Court affirmed the order of the Superior Court. Shortly thereafter, on June 25, 1993, the Supreme Court granted a petition for reargument, and the case presently awaits such reargument. It may have been that the delay in deciding DeBlase's petition for allocatur and the Court's difficulty in deciding *Schaeffer* were related, but this does not appear from the record in the instant case. Because the delay of three years and eight months is substantial and because on the record in this case the delay is unexplained, we are hard pressed to find justification for it.

"The Commonwealth has an affirmative duty to move a case to trial." *Commonwealth v. Cooley,* 484 Pa. 14, 20, 398 A.2d 637, 640 (1979). Where "the delay is not attributable to the affirmative action of the defendant, the ultimate responsibility for such delay, which is the product of either negligence or inefficiency, must rest with the government rather than with

the [defendant]." *Commonwealth v. Roundtree,* 469 Pa. 241, 252, 364 A.2d 1359, 1364–1365 (1976). Here, while the case lay dormant before the Supreme Court, and appellee repeatedly asserted his right to a speedy trial, the Commonwealth was nevertheless powerless to bring the case to trial. Thus, while the delay must be weighed against the Commonwealth, it will not be weighed as heavily as if it had been caused deliberately by the Commonwealth. See: *Barker v. Wingo, supra,* 407 U.S. at 531, 92 S.Ct. at 2192, 33 L.Ed.2d at 117. See also: *Commonwealth v. Hawk,* 390 Pa.Super. 382, 390, 568 A.2d 953, 957 (1990) (en banc), *aff'd on other grounds,* 528 Pa. 329, 597 A.2d 1141 (1991).

The final prong of the *Barker v. Wingo* balancing test involves the prejudice, if any, caused by the delay. The United States Supreme Court has recently observed:

[C]onsideration of prejudice is not limited to the specifically demonstrable, and, ... affirmative proof of particularized prejudice is not essential to every speedy trial claim. See *Moore, supra,* 414 U.S. [25], at 26, 94 S.Ct., [188] at 189 [38 L.Ed.2d 183 (1973) ]; *Barker, supra,* 407 U.S., at 533, 92 S.Ct., at 2193. *Barker* explicitly recognized that impairment of one's defense is the most difficult form of speedy trial prejudice to prove because time's erosion of exculpatory evidence and testimony "can rarely be shown." 407 U.S., at 532, 92 S.Ct., at 2193. And though time can tilt the case against either side, see *id.,* at 521, 92 S.Ct., at 2187; *Loud Hawk, supra,* 474 U.S., at 315, 106 S.Ct., at 656, one cannot generally be sure which of them it has prejudiced more severely. Thus, we generally have to recognize that excessive delay presumptively compromises the reliability of a trial in ways that neither party can prove or, for that matter, identify. While such presumptive prejudice cannot alone carry a Sixth Amendment claim without regard to the other *Barker* criteria, see *Loud Hawk, supra,* at 315, 106 S.Ct., at 656, it is part of the mix of relevant facts, and its importance increases with the length of delay.

*Doggett v. United States,* —— U.S. ——, ——, 112 S.Ct. 2686, 2692–2693, 120 L.Ed.2d 520, 530–531 (1992). See: *Moore v.*

*Arizona,* 414 U.S. 25, 94 S.Ct. 188, 38 L.Ed.2d 183 (1973) (affirmative demonstration of prejudice not necessarily required to prove speedy trial violation). "[T]he longer the delay and the more vigorous the defendant's demand to be tried speedily, the more reason the state must show for the delay and the less harm (of whatever type) to himself the defendant need show." *United States ex rel. Mitchell v. Fairman,* 750 F.2d 806, 808 (7th Cir.1984). See also: *United States v. Shell,* 974 F.2d 1035, 1036 (9th Cir.1992); *United States v. Koskotas,* 888 F.2d 254, 258 (2nd Cir.1989); *Commonwealth v. Hawk, supra,* 390 Pa.Super. at 391, 568 A.2d at 957.

Here, DeBlase was incarcerated for a period of six and one-half (6½) years from the date of his arrest until the time when he was released on bail by the federal court. That this incarceration was oppressive cannot be denied. "Likewise, it would be pure sophistry to argue that this delay did not cause the accused and his family severe anxiety." *Commonwealth v. Williams,* 457 Pa. 502, 507, 327 A.2d 15, 17 (1974) (footnote omitted). Still, the evidence of guilt in this case is great, and the root cause of the delay in bringing the case to trial was appellee's pre-trial attempt to suppress incriminating statements which he had made. Although he was clearly entitled to do this and the results have confirmed the existence of arguable merit in the claims which he advanced, his complaint that he was prejudiced by the resulting delay sounds somewhat hollow. Since November, 1991, moreover, he has been free on bail. During all this time there is no evidence that the Commonwealth intentionally sought to delay the trial.

■ Appellee argues, inter alia, that he has been prejudiced because Terry Lee Maute was tried and acquitted of participating in the robbery and murder of David Swinehart and has now agreed to testify as a witness for the prosecution. This is not the type of prejudice which the speedy trial rule was intended to prevent. The rule was not intended to benefit persons accused of crime by preventing a determination of issues of guilt and innocence after a full disclosure of the facts. If Maute testifies as a Commonwealth witness, he will un-

doubtedly be subjected to cross-examination by the defense, when he can be asked about prior inconsistent statements, if any, which he made. Thereafter, the credibility of his testimony will be for the trier of the facts.

The trial court found that a defense witness had died during the pre-trial delay and that appellee had been prejudiced thereby. Our careful review of the record fails to disclose evidence of such a witness and/or the substance of his or her testimony. Without such evidence, we are constrained to reject the trial court's finding as unsupported by the record.

There is no evidence of any specific prejudice to appellee because of the delay in commencing trial. We say this fully cognizant of the fact that delay frequently causes prejudice which cannot be demonstrated by specific evidence and that excessive delay may well compromise the reliability of a trial in ways that neither party can identify or prove. The delay which occurred in this case following the filing by appellee of a petition for allocatur from a decision by the Superior Court was unfortunate. Still, except for this delay, the Commonwealth consistently has acted with due diligence. The delay was in the judicial process and arose because of circumstances which the Commonwealth was almost powerless to prevent. The several appeals involved non-frivolous issues of substantial magnitude and complexity. Therefore, before delay in the appellate process is weighed so heavily against the Commonwealth that its prosecution of appellee for murder is barred, the delay must cause specific prejudice. No specific prejudice can be found and identified in the instant case.

We hold, after application of the *Barker v. Wingo* balancing test, that appellee's speedy trial rights were not violated. For similar reasons, appellee has not been denied due process of law.

Reversed and remanded for further proceedings. Jurisdiction is not retained meanwhile.