660 A.2d 107

**COMMONWEALTH of Pennsylvania, Appellee,**

v.

**Regis BOBITSKI, Appellant.**

Superior Court of Pennsylvania.

Argued April 6, 1995.

Filed June 14, 1995.

Joseph E. Hudak, Pittsburgh, for appellant.

Scott A. Bradley, Asst. Dist. Atty., Pittsburgh, for Com.

Before POPOVICH, FORD ELLIOTT and BROSKY, JJ.

POPOVICH, Judge:

This is an appeal from a judgment of sentence entered in the Court of Common Pleas of Allegheny County following appellant's convictions on four counts of Commercial Bribery.[1] Herein, appellant contends that his speedy trial rights under the United States' and Pennsylvania Constitutions and Pa. R.Crim.P. 1100 were violated. After careful review, we affirm.

In August 1989, appellant was charged with five counts of Commercial Bribery, one count of Forgery, one count of Tampering with Records or Identification, one count of criminal conspiracy and two counts of Corrupt Organizations.[2] These charges arose during appellant's employment with the Thrift Drug Company. Appellant was responsible for soliciting bids and awarding construction contracts, which enabled him to solicit bribes from various contractors spanning a period of approximately six years.

On February 7, 1990, appellant filed a motion to quash the charges of Corrupt Organizations and Forgery. The trial court granted the motion to quash these counts, and the Commonwealth appealed. The Commonwealth believed that a

---

1. 18 Pa.C.S.A. § 4108(a). The trial court opinion stated that appellant was convicted on five counts of Commercial Bribery, but the record reveals that appellant was convicted and sentenced on four counts of Commercial Bribery. He was charged with five counts of Commercial Bribery.

2. The Commonwealth *nolle prossed* the charges of conspiracy and tampering with records.

proper interpretation of the Pennsylvania Corrupt Organizations law supported the charges.[3]  The trial court entered an order staying prosecution on the remaining charges while the Commonwealth appealed.  We affirmed the trial court's ruling in a memorandum opinion filed June 12, 1991.  Our supreme court granted *allocatur* and subsequently affirmed our order in an opinion dated November 1, 1993.[4]  In its opinion, our supreme court stated that the Commonwealth's position could not be supported by a reading of the corrupt organizations statute and would lead to "absurd and unintended results."

On March 8, 1994, appellant filed a motion to dismiss the remaining charges of commercial bribery.  Appellant contended that his speedy trial rights under Article I, section 9 of the Pennsylvania Constitution, the 6th Amendment of the U.S. Constitution, and Pa.R.Crim.P. 1100 were violated.  Appellant contended that not only was he prejudiced by the delay in bringing him to trial but also that two defense witnesses had been lost.  One witness had apparently died and the other allegedly no longer resided in Pennsylvania.  Appellant contended that these witnesses would have proved that Thrift Drug consented to his activities.  The trial court allowed appellant the opportunity to establish prejudice due to the loss of these witnesses, but he was unable to do so.

Also, the Commonwealth and appellant disagreed as to whether appellant had consistently asserted his speedy trial rights.  Appellant never filed motions to dismiss the Commercial Bribery charges while the appeal process was ongoing. The Commonwealth contended that appellant agreed to a stay of these charges in exchange for remaining free on bail.  The court denied appellant's motion to dismiss the Commercial Bribery charges.

Appellant proceeded to a jury trial on March 14, 1994, and was convicted of four counts of commercial bribery.  The

3.  The Commonwealth did not appeal the dismissal of the Forgery charge.  The Commonwealth believed that Pennsylvania and Federal case law supported the Corrupt Organizations charges and relied on various state and federal cases in asserting this claim.

4.  *Commonwealth v. Bobitski*, 534 Pa. 310, 632 A.2d 1294 (1993).

court immediately sentenced appellant to a term of probation for each conviction. Appellant filed post-trial motions, which were denied, followed by this timely appeal.

Appellant now contends that his speedy trial rights were violated. We disagree and affirm his judgment of sentence.

A defendant's speedy trial rights are governed by Article I, Section 9 of the Pennsylvania Constitution, Pa.R.Crim.P. 1100 and the Sixth Amendment to the United States Constitution. *Commonwealth v. Africa*, 524 Pa. 118, 569 A.2d 920 (1990); *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Our supreme court, in *Commonwealth v. Africa*, *supra*, outlined the appropriate inquiry for determining if a defendant's speedy trial rights were violated, *supra:*

> In analyzing alleged violations of the rule, we engage in a two-step analysis. We must decide at the outset whether the delay itself was sufficiently long to be "presumptively prejudicial." *Commonwealth v. Reinhart*, 466 Pa. 591, 353 A.2d 848 (1976). If the delay is determined to be presumptively prejudicial, the court then is required to employ the balancing test set forth in *Barker v. Wingo*, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972), which considers four factors: the length of the delay; the reason for the delay; the defendant's assertion of the right to a speedy trial; and any prejudice to the defendant arising from the delay. *Jones v. Commonwealth*, 495 Pa. 490, 434 A.2d 1197 (1981); *Commonwealth v. Myers*, 472 Pa. 200, 371 A.2d 1279 (1977); *Commonwealth v. Hamilton*, 449 Pa. 297, 297 A.2d 127 (1972). The length of the delay, of course, is the "triggering mechanism," *Commonwealth v. Williams*, 457 Pa. 502, 506–507, 327 A.2d 15, 17 (1974), and "when a delay is so extensive that a court considers it presumptively prejudicial, inquiry into the three other factors is necessary." In deciding whether a violation has occurred, we further analyze the circumstances of each case within the context of a consideration of the rights of society as well as those of the accused to be protected from undue and oppressive pre-trial imprisonment. *Commonwealth v. Simms*, 509 Pa. 11, 500

A.2d 801 (1985); *Commonwealth v. Pearson,* 450 Pa. 467, 303 A.2d 481 (1973).

*Africa, supra,* 524 Pa. 124, 569 A.2d at 923.

■ Here, the Commonwealth concedes that the delay of almost five years between the filing of the complaint and appellant's trial is prejudicial. In *Africa,* our supreme court held that a twenty-seven month delay was "presumptively prejudicial" necessitating a balancing of the *Barker* factors. *Africa,* at 124, 569 A.2d at 923. Therefore, we must examine the remaining factors in light of the facts in this case.

However, when we apply the factors outlined in *Barker* and *Africa,* we cannot find that appellant's speedy trial rights have been violated in light of our decision in *Commonwealth v. DeBlase,* 431 Pa.Super. 100, 635 A.2d 1091 (1994), *allocatur granted* 538 Pa. 632, 647 A.2d 507 (1994). In *DeBlase,* the defendant's case was called to trial almost eight years after his arrest. *Id.* 431 Pa.Super. 103–109, 635 A.2d at 1092–1095. The delay in bringing the case to trial resulted from the Commonwealth's appealing the lower court's granting of various defense suppression motions. *Id.* at 103, 635 A.2d at 1092. The delay was further occasioned by our supreme court's holding the case for a significant amount of time before denying *allocatur.* When defendant's case was finally called to trial, the lower court granted defendant's motion to dismiss on the grounds that his speedy trial rights had been violated. *Id.* at 104, 635 A.2d at 1093.

The Commonwealth appealed the trial court's ruling, and we reversed, holding that defendant's speedy trial rights had not been violated. *Id.* at 114, 635 A.2d at 1098. The Commonwealth conceded that the delay was presumptively prejudicial and that appellant had asserted his speedy trial rights at all times. *Id.* at 109, 635 A.2d at 1095. We stated that the delays caused by the litigation and appeal of pretrial motions could not be weighed against the Commonwealth. *Id.* at 113, 635 A.2d at 1097. Regarding the delay of three years and eight months during which our supreme court considered the defendant's petition for *allocatur,* we stated that this weighed

against the Commonwealth, but not as heavily as if the delay had been caused deliberately by the Commonwealth. *Id.* at 111, 635 A.2d at 1096.

Finally, we evaluated if there had been prejudice to the defendant as a result of the delay. *Id.* at 113, 635 A.2d at 1097. We rejected the trial court's finding that a witness had died during the delay because the record did not disclose evidence of such a witness or the substance of the witness' testimony. *Id.* After conducting the *Barker v. Wingo,* inquiry we concluded that the defendant's speedy trial rights had not been violated and he had not been prejudiced, even though there were significant delays caused by the appellate process. *Id.* at 114, 635 A.2d at 1098.

Here, we have an almost identical situation. The Commonwealth concedes that the delay was presumptively prejudicial but does not concede that appellant asserted his speedy trial rights at all times. In fact, the Commonwealth's petition for stay of the Commercial Bribery charges was granted and appellant did not protest this trial court ruling. Thus, appellant's timely assertion of his speedy trial rights cannot weigh against either party.

Important similarities exist between this case and *DeBlase* when examining the reason for the delay and the prejudice suffered by the defendant. In this case, the delay resulted from the Commonwealth's appeal of the trial court's dismissal of the Corrupt Organizations charges. The Commonwealth believed, in good faith, that a proper reading of the Pennsylvania Corrupt Organizations Act supported its position. The Commonwealth based its position on state and federal case law interpreting similar statutes. In fact, some of the delays in the appellate process resulted from appellant's requests for extensions of time to file a brief.

Appellant asserts that his speedy trial rights were violated because the Commonwealth appealed in bad faith. There is no evidence of bad faith except appellant's bald assertion of bad faith and appellant's continued reference to our supreme court's opinion. Appellant asserts that our supreme court stated that the Commonwealth's reading of the corrupt organi-

zation statute was "absurd." This is not so. The supreme court stated that the Commonwealth's reading of the statute would cause "absurd results." Moreover, if the Commonwealth's appeal was made in bad faith and was frivolous, it is highly unlikely that our supreme court would have granted *allocatur*. The Commonwealth's position was not without legal authority. Thus, this factor cannot be weighed against the Commonwealth.

Finally, regarding prejudice, *DeBlase* leads us to conclude that appellant was not prejudiced by the delay. Appellant asserts that two witnesses were lost as a result of the delay. One witness apparently died, but appellant was not able to establish how this witness would have helped his case. The other witness was allegedly outside the jurisdiction of the Pennsylvania courts. Appellant failed to substantiate the testimony of either of these witnesses when given the opportunity to do so at the pretrial hearing. Once again, this factor cannot be weighed against the Commonwealth. Because appellant has failed to establish a violation of his speedy trial rights, the lower court did not err in failing to dismiss the charges against appellant. *See also, Commonwealth v. Smalis,* 527 Pa. 375, 592 A.2d 669 (1991), *cert. denied, Smalis v. Pennsylvania,* 502 U.S. 859, 112 S.Ct. 175, 116 L.Ed.2d 138 (1991) (holding that defendant's speedy trial rights were not violated, and defendant could be tried on remaining charges, where Commonwealth's appeal of a demurrer ruling consumed approximately six years).

Judgment of sentence affirmed.