Donald Franklin Dowd, Jr., : 
                                 : No. 2113 C.D. 2016
              Petitioner : Submitted: July 14, 2017
                                 :
           v. :
                                 :
Dominic J. Rossi, Esquire, :
                                 :
             Respondent :

OPINION NOT REPORTED

MEMORANDUM OPINION
**PER CURIAM**                               FILED:  September 1, 2017

         Donald Franklin Dowd, Jr. petitions *pro se* for review of the order of an Administrative Law Judge (ALJ) with the Office of Attorney General (OAG) denying his appeal of the decision of Dominic J. Rossi, Esquire, Deputy Court Administrator of the Philadelphia County Court of Common Pleas (trial court) that had denied Dowd's challenge to the accuracy of his criminal history record under the Criminal History Record Information Act (CHRIA).[1]  We affirm.

         On July 1, 2015, Dowd filed a challenge to the accuracy of his criminal history record information under Sections 9151(a) and 9152(c) of CHRIA,[2] alleging:  a violation of the Supremacy Clause of the United States

---

[1] 18 Pa. C.S. §§9101-9183.

[2] 18 Pa. C.S. §§9151(a), 9152(c).  Section 9151(a) states, in relevant part, that "[a]ny individual . . . has the right to review, challenge, correct and appeal the accuracy and completeness of his criminal history record information."  In turn, Section 9152(c) states:
**(Footnote continued on next page…)**

Constitution depriving the trial court of jurisdiction based on the omission of the statutory authority by the General Assembly to extradite and prosecute him for the crimes of first degree murder and criminal conspiracy;[3] fraud by the Clerk of

---

**(continued…)**

> The individual may challenge the accuracy of his or her criminal history record information by specifying which portion of the record is incorrect and what the correct version should be. Failure to challenge any portion of the record in existence at that time will place the burden of proving the inaccuracy of any part subsequently challenged upon the individual. Information subsequently added to such record shall also be subject to review, challenge, correction or appeal.

[3] The circumstances underlying Dowd's convictions in the trial court and his direct appeals of the judgment of sentence have been summarized by the Superior Court as follows:

> The Commonwealth charged [Dowd] with the execution-style killing of R.M. The homicide transpired on November 22, 1970, and the underlying convictions in this case, murder and criminal conspiracy to commit murder, occurred in September 1973. [Dowd] and R.M. had been members of the People's Liberation Army ("PLA"), a radical revolutionary group. R.M., along with another member of the group, Philip Wormley, allegedly perpetrated a robbery to benefit the PLA. Both R.M. and [] Wormley purportedly retained some proceeds from that robbery and the PLA considered them a security risk. A member of the PLA testified that the group, including [Dowd], agreed to execute both R.M. and [] Wormley. R.M. suffered twelve gunshot wounds, which eventually resulted in his death. R.M.'s attackers shot him with a .38 caliber weapon and a .44 caliber firearm. In addition, a .9 mm casing was located at the scene. Prior to his death, R.M. identified four men, including [Dowd], as his assailants. Although the Commonwealth did not charge [Dowd] with the crime, [] Wormley was murdered contemporaneously in the same area and with the exact weapons utilized on R.M.

**(Footnote continued on next page…)**

**(continued…)**

> [Dowd] fled the Commonwealth after the shooting only to be apprehended in Georgia in December 1970, for carrying a .9 mm firearm without a permit. A grand jury in Pennsylvania indicted [Dowd] *in abstentia* on December 16, 1970. In February 1971, [Dowd] was extradited to Philadelphia, where trial was delayed for thirty-one months.
>
> During [Dowd]'s trial, the Commonwealth introduced two separate dying declarations by the victim that identified [Dowd] as one of his attackers. In addition, the Commonwealth introduced evidence that Philip Wormley was murdered in order to demonstrate a common scheme between the two killings. Evidence of the robbery that R.M. and [] Wormley committed was offered to prove motive for the crime. The jury convicted [Dowd] of both first degree murder and criminal conspiracy to commit murder and the trial court sentenced [Dowd] to life imprisonment. [Dowd]'s trial counsel neglected to file a direct appeal and [Dowd] filed a *pro se* motion to reinstate his appellate rights *nunc pro tunc*, which the Pennsylvania Supreme Court granted.
>
> Thereafter, our Supreme Court affirmed [Dowd]'s conviction, holding that the delay in [Dowd]'s case did not deny him his speedy trial rights, that the victim's second dying declaration was admissible, and evidence that [Dowd] belonged to a revolutionary group that took part in a robbery was admissible. *Commonwealth v. Dowd*, 372 A.2d 705 (Pa. 1977). The Pennsylvania Supreme Court denied [Dowd]'s petition for a rehearing and he petitioned for a writ of certiorari to the United States Supreme Court. That petition was denied.

*Commonwealth v. Dowd*, (Pa. Super., No. 2261 EDA 2005, filed October 27, 2010), slip op. at 1-3 (citations to trial transcript omitted). *See also Commonwealth v. Riggins*, 386 A.2d 520, 523 (Pa. 1978) ("To accept appellant's present contention that where the link establishing the identity of the perpetrator of the crime[s of first degree murder and criminal conspiracy] is supplied by an uncorroborated dying declaration the evidence must be deemed insufficient as a matter of law, requires a determination that dying declarations must be accorded less weight than other types of admissible evidence. This we decline to do. The jury was properly instructed that [it] could consider these statements of the deceased in determining whether the appellant was one of the
**(Footnote continued on next page…)**

Courts in the trial court for changing the docket to read that he was arrested, charged, indicted, tried, convicted and sentenced pursuant to Section 2502 of the Crimes Code[4] because that statute did not exist at the time that he was charged with and convicted of first degree murder; and that the new docket in his case is fraudulently altered, incomplete, and inaccurate so that there is no valid judgment of sentence supporting his incarceration that comports with the Full Faith and Credit Clause of the United States Constitution. Certified Record (C.R.) Appendix

---

**(continued…)**

killers. This evidence alone, if believed (and it apparently was believed by the jury) was sufficient in law to sustain the verdict.") (footnote omitted).

[4] 18 Pa. C.S. §2502. As the Pennsylvania Supreme Court has explained:

> The Crimes Code in Chapter 25, for the first time in Pennsylvania, establishes an offense known as "criminal homicide". A person is guilty of this crime "if he intentionally, knowingly, recklessly or negligently causes the death of another human being." 18 Pa. C.S. §2501(a). The Code then states that "[c]riminal homicide [is] *classified* as murder, voluntary manslaughter, or involuntary manslaughter." *Ibid.* §2501(b). (Emphasis supplied.) Murder is in turn divided into three categories: murder of the first degree, murder of the second degree, and murder of the third degree. *Ibid.* §2502. Murder of the first degree and of the second degree under the Crimes Code together correspond to murder in the first degree under prior law[, the former Penal Code, Act of June 24, 1939, P.L. 872, *as amended*, 18 P.S. §4701 repealed by the Act of December 6, 1972, P.L. 1482]; the new murder of the first degree is an intentional killing, while the new murder of the second degree is felony-murder. Murder of the third degree is comprised of "all other kinds of murder," 18 Pa. C.S. §2502(c) (Supp. 1977-1978), thus taking the place of the former murder in the second degree, which the Penal Code described in the same words.

*Commonwealth v. Polimeni*, 378 A.2d 1189, 1194 (Pa. 1977) (footnotes omitted).

4

(Appx.) 15 at Exhibit (Ex.) 1. As a result, Dowd directed the Clerk of Courts to: correct his criminal history record information to reflect the enumerated omissions, deficiencies, and alterations and find that the trial court never had subject matter jurisdiction over his criminal case; notify all other criminal justice agencies of the correct, accurate, and complete records; issue an affidavit that there is no valid judgment of sentence supporting his incarceration; and conduct a hearing to review his challenge. The Clerk of Courts forwarded Dowd's challenge to Rossi.

On August 12, 2015, Rossi sent Dowd a letter stating "that upon review of the dockets we have determined that they are correct." C.R. Appx. 15 at Ex. 2. As a result, on September 7, 2015, Dowd appealed Rossi's decision to the OAG pursuant to Section 9152(e)(1) of CHRIA.[5] C.R. Appx. 1.

On June 23, 2016, the ALJ conducted a hearing[6] at which Dowd appeared and presented evidence in support of his claims; Rossi did not appear at the hearing.[7] On December 7, 2016, the ALJ issued the instant disposition and order denying Dowd's appeal of Rossi's decision stating, in relevant part:

> [Dowd] does not appear to dispute that he was convicted of murder and conspiracy to commit murder.

---

[5] 18 Pa. C.S. §9152(e)(1). Section 9152(e)(1) states that "[i]f the challenge is ruled invalid, an individual has the right to appeal the decision to the [OAG] within 30 days of notification of the decision by the criminal justice agency."

[6] Section 9152(e)(2) of CHRIA states that OAG "shall conduct a hearing de novo in accordance with the Administrative Agency Law[, 2 Pa. C.S. §§501-508]. The burden of proof shall be upon the party bearing the burden of proof on the challenge." 18 Pa. C.S. §9152(e)(2).

[7] In November 2015, Dowd filed an Affidavit of Truth with the Pennsylvania State Police (PSP) and OAG and a Notice of Intent to file a Praecipe for Entry of Default against PSP due to the delay in responding to his appeal. C.R. Appx. 6, 8, 10. In December 2015, PSP's request to be removed from the caption of the OAG appeal was granted because PSP was not a party to the action. C.R. Appx. 9, 16 at 2.

> [Dowd] alleges that the initial charging decision and his extradition from the State of Georgia were defective. An appeal pursuant to Section 9152 of [CHRIA], 18 Pa. C.S. §9152, is limited to the accuracy of one's criminal history record as it exists within the criminal justice system. *Dunbar v. Pennsylvania*, 902 A.2d 1002 (Pa. Cmwlth. 2006)[, *appeal denied*, 916 A.2d 635 (Pa. 2007)]. Based upon the records provided by [Dowd], including the sentencing sheet and other court documents, [and] his testimony, the records as maintained by the Court Administrator of Philadelphia accurately reflect the conviction for murder and conspiracy. Those records, as reported to [PSP] for inclusion in [Dowd]'s criminal history, are accurately reflected in Docket number CP-51-CR-1205511-1970 as maintained by the Administrative Office of Pennsylvania Courts.

C.R. Appx. 16 at 4-5. Dowd then filed this appeal of the ALJ's order.[8]

On appeal,[9] Dowd argues that the ALJ's disposition and order are arbitrary and capricious because he disregarded the evidence that Dowd presented and did not fully address the alteration and tampering with Dowd's criminal history record information; Rossi did not meet his burden of proving the accuracy of Dowd's criminal history record information in violation of Dowd's due process and equal protection rights; and Rossi's failure to maintain an accurate criminal history record information violated his duty under the United States and Pennsylvania Constitutions, international law, his fiduciary responsibility and oath of office and as an attorney, and the Code of Professional Responsibility.

---

[8] Section 9152(e)(3) of CHRIA states that "[t]he decision of [OAG] may be appealed to the Commonwealth Court by an aggrieved individual." 18 Pa. C.S. §9152(e)(3).

[9] This Court's review of the ALJ's order is limited to determining whether constitutional rights were violated, whether an error of law was committed or whether necessary findings of fact are supported by substantial evidence. *Dunbar*, 902 A.2d at 1004 n.2.

However, to the extent that Dowd raises issues on appeal that were not raised in his challenge to the accuracy of his criminal history record information under CHRIA, such claims are waived for purposes of appeal. Pa. R.A.P. 1551(a) ("No question shall be heard or considered by the court which was not raised before the government unit . . . ."); *Laundry Owners Mutual Liability Insurance Association v. Insurance Commissioner of Pennsylvania*, 91 A.3d 747, 753 (Pa. Cmwlth. 2014) (holding that an issue is waived where the party fails to raise it before the governmental unit).

With respect to his remaining claims, seeking a determination that the trial court was without jurisdiction in the underlying criminal proceeding and associated ancillary relief, it is well settled that a request to correct a record under CHRIA cannot be used to attack the underlying criminal proceedings.[10] As this Court has explained:

> To the extent that Lindsey seeks to challenge the authority of the charges originally brought against him, and/or seeks to challenge the legal sufficiency and/or constitutionality of the judicial proceedings that flowed from those charges, the criminal proceedings in the Court of Common Pleas on those charges is and was the sole avenue for the address of, and appeal from, such challenges. The underlying charges and judicial

---

[10] Contrary to Dowd's assertions, the ALJ did not act arbitrarily or capriciously disregard evidence in denying the requested relief. Rather, the evidence that Dowd presented at the ALJ's hearing demonstrates that there are both a written judgment of sentence signed by the trial court judge and a written order of commitment signed by the clerk of the trial court supporting his incarceration. C.R. Appx. 15 at Ex. B, Ex. J-7. Moreover, the Department of Corrections retains detention authority even in the absence of a written sentencing order. *See, e.g., Joseph v. Glunt*, 96 A.3d 365, 372 (Pa. Super.), *appeal denied*, 101 A.3d 787 (Pa. 2014) ("[C]ourts confronting this issue in the past have deemed a record of the valid imposition of a sentence as sufficient authority to maintain a prisoner's detention notwithstanding the absence of a written sentencing order under [Section 9764(a)(8) of the Sentencing Code,] 42 Pa. C.S. §9764(a)(8).").

7

> proceedings that form the foundation of Lindsey's criminal history record contained within the PSP Central Repository are beyond the scope of the CHRIA's provisions. *Clark* [*v. Pennsylvania State Police*, 760 A.2d 1202, 1205 (Pa. Cmwlth. 2000)].

*Lindsey v. Pennsylvania State Police*, (Pa. Cmwlth., No. 495 C.D. 2011, filed November 14, 2011), slip op. at 7.[11] *See also Clark*, 760 A.2d at 1205 ("We would first observe, however, that we are in agreement with the ALJ that, even if his birth date as maintained by the central repository is inaccurate, Clark would not be entitled to expungement of the record. First, there is no dispute that the record accurately reflects Clark's 1973 arrest and subsequent conviction. To order expungement of this conviction would only thwart the purpose of the criminal history record information and mislead law enforcement officials as to Clark's criminal activities. Clark cannot utilize the Act as a means to attack collaterally his valid 1973 arrest and subsequent conviction."); *Neal v. Pennsylvania State Police*, (Pa. Cmwlth., No. 513 C.D. 2012, filed March 5, 2013), slip op. at 5 n.7 ("Neal misunderstands the purpose of the CHRIA, which is to ensure the accuracy of an individual's criminal history record information, not to ensure the validity of the underlying criminal proceedings from which an individual's criminal history record information is derived. *See Clark*, 760 A.2d at 1205. Thus, Neal cannot bring his challenge to the underlying prohibited offensive weapons and burglary charges under the CHRIA, as the ALJ and this Court have jurisdiction only over a challenge to the accuracy of Neal's criminal history record information.").

---

[11] This Court's unreported memorandum opinions may be cited "for [their] persuasive value, but not as a binding precedent." Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

As noted above, the Pennsylvania Supreme Court affirmed on direct appeal the judgment of sentence imposed on Dowd's first degree murder conviction.[12] *See Commonwealth v. Dowd*, 372 A.2d 705 (Pa. 1977). His attempt to invalidate either the judgment of sentence or his criminal conviction under CHRIA in the instant proceeding is unavailing.

Finally, Dowd's assertion that the computerized docket entries in the Common Pleas Case Management System (CPCMS) regarding his criminal conviction for first degree murder listing a new docket number and the current section of the Crimes Code within its database somehow invalidates his conviction or the judgement of sentence is likewise unavailing. It is undisputed that he was convicted of first degree murder and sentenced therefor. As explained above, "[m]urder of the first degree and of the second degree under the Crimes Code together correspond to murder in the first degree under prior law[, the former Penal Code, Act of June 24, 1939, P.L. 872, *as amended*, 18 P.S. §4701 (repealed)] . . . ." *Commonwealth v. Polimeni*, 378 A.2d 1189, 1194 (Pa. 1977). The computerized docket entries accurately reflect the crime for which he was convicted and upon which the judgment of sentence was imposed. As a result, the listing of a new docket number and the current section of the statute for that crime within the computer's database does not provide a basis upon which to attack his underlying criminal conviction or judgment of sentence. *See* 204 Pa. Code §213.81, Section 11.0 Commentary ("Case records are as susceptible to clerical errors and omissions as any other public record. The power of the court to correct errors in its own

---

[12] Dowd did not contest the accuracy of the criminal conspiracy charge in the challenge to the accuracy of his criminal history record information under Sections 9151(a) and 9152(c) of CHRIA. *See* C.R. Appx. 15 at Ex. 1.

9

records is inherent. *E.g.*, *Jackson v. Hendrick*, 746 A.2d 574 (Pa. 2000). It is important to emphasize that this section does not provide a party who is dissatisfied with a court's decision, ruling or judgment a new avenue to appeal the same by merely alleging there is an error in the court's decision, ruling or judgment. Rather, this section permits a party to 'fix' information that appears in a case record which is not, for one reason or another, correct.").[13]

Accordingly, the ALJ's order is affirmed.

Judge Cosgrove concurs in result only.

---

[13] Moreover, review of the custodian's response to a request to correct a CPCMS record is vested in the trial court judge and not the OAG under CHRIA. *See* 204 Pa. Code §213.81, Section 10.0(F) ("A requestor may seek review of the custodian's response under Subsections E(1)-(4) within 10 business days of the mailing date of the response. 1. The request for review shall be submitted on a form that is designed and published by the Administrative Office of Pennsylvania Courts. 2. The request shall be reviewed by the judge(s) who presided over the case.").

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Donald Franklin Dowd, Jr.,       :
                                   : No. 2113 C.D. 2016
              Petitioner      :
                                    :
                      v.           :
                                    :
Dominic J. Rossi, Esquire,         :
                                    :
             Respondent    :

**PER CURIAM**

# **O R D E R**

        AND NOW, this 1st day of <u>September</u>, 2017, the order of the Administrative Law Judge with the Office of Attorney General dated December 7, 2016, is AFFIRMED.